George P. SHULTZ, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee and Cross-Appellant,

v.

MISTLETOE EXPRESS SERVICE, INC., Defendant-Appellant and Cross-Appellee.

Nos. 450–69, 451–69.

United States Court of Appeals, Tenth Circuit.

Dec. 8, 1970.

Rehearing Denied Dec. 31, 1970.

Second Rehearing Jan. 19, 1971.

Donald S. Shire, Washington, D. C. (Laurence H. Silberman, Sol. of Labor, Bessie Margolin, Associate Sol., and Carin Ann Clauss, Atty., U. S. Dept. of Labor, and Major J. Parmenter, Regional Sol., on the brief) for plaintiff-appellee and cross-appellant.

Harvey L. Harmon, Oklahoma City, Okl. (Morgan, Dykeman & Williamson, Nichols & Ellis, and Franklin, Harmon & Satterfield, Inc., Oklahoma City, Okla., of counsel, on the brief), for defendant-appellant and cross-appellee.

Before PHILLIPS, BREITENSTEIN and HILL, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The Secretary of Labor brought this action under § 17 of the Fair Labor Standards Act (FLSA) as amended, 29 U.S.C. § 201 et seq., to enjoin Mistletoe Express Service, Inc., from violating the minimum wage, overtime, and record-keeping requirements, and to restrain Mistletoe from continuing to withhold about $39,000 in unpaid minimum wages and overtime compensation. Mistletoe claimed that the workers in question were independent contractors or the employees of independent contractors. The trial court held that they were Mistletoe employees and enjoined Mistletoe from future FLSA violations. Mistletoe appeals from these portions of the judgment. The court refused to restrain the continued withholding of back wages. The Secretary appeals on this issue.

Mistletoe, an Oklahoma corporation and a common carrier by motor vehicle transporting goods in interstate commerce, has its principal office in Oklahoma City and has 320 freight terminals in various cities and towns in Oklahoma and neighboring states. We are concerned with terminal operations in five Oklahoma towns, Ardmore, Pauls Valley, Ada, Duncan, and Muskogee. During the period in question, Mistletoe contracted with five individuals to conduct its business and operate its facilities at these locations.

The first part of the two-stage trial was devoted to the independent contractor issue. After considerable vacillation the trial court held that the workers in question were employees within the meaning of the Act and certified the case for interlocutory appeal to this court under 28 U.S.C. § 1292(b). We denied leave to appeal. The second stage of the trial related to the injunction issues.

In their presentation of the case to us the parties use a plethora of words, and make unimpressive charges and countercharges. Mistletoe argues that the court mechanically adopted findings submitted by the Secretary contrary to the admonition found in United States v. El Paso Natural Gas Company, 376 U.S. 651, 656, 84 S.Ct. 1044, 1047, 12 L.Ed.2d 12, and hence those findings are not binding on the appellate court. Two things are wrong with the argument. First El Paso says that such findings "are not to be rejected out-of-hand" and "will stand if supported by evidence." Ibid. Second, the court did not complaisantly adopt all of the Secretary's proposed findings but made findings which favor Mistletoe on the issue of back due wages. As we understand El Paso, we must examine the record and determine the validity of the findings. See also M. B. Skinner Company v. Continental Industries, Inc., 10 Cir., 346 F.2d 170, 173, cert. denied 383 U.S. 934, 86 S.Ct. 1062, 15 L.Ed.2d 851. We have done this and

find no significant dispute on any material fact.

The prime issue is whether the terminal operations are conducted by independent contractors. Mistletoe trucks handle shipments to and from the terminals. The terminal operators make local deliveries and pickups. Mistletoe had an "Agent's Contract" with the operator at each terminal which provided that "the relationship is that of an independent contractor and Second Party [the agent] shall be responsible to the First Party [Mistletoe] only for the above specified results." The contracts were terminable by either party on ten days written notice.

Mistletoe owned and supplied the buildings, offices, docks, office equipment and supplies, records, report forms, radios, and other miscellaneous facilities at the terminals. It also paid utility bills such as heating gas, electrical power, and telephone service. The operators furnished the locally used trucks and hired and fired the local employees. They handled only Mistletoe shipments.

The compensation paid by Mistletoe to the operators was "10% upon all general express charges, both outgoing and incoming, and upon C.O.D. collection fees on incoming shipments and value charges" plus a weekly equipment and operating allowance which varied from a high of $280.00 in Ardmore to a low of $36.93 in Pauls Valley. Each month Mistletoe made deductions for federal income and social security taxes from the commissions paid to the agents. Mistletoe supervisors visited each station regularly to inspect its operations. Each terminal was identified by a large sign reading "MISTLETOE EXPRESS" and located near the entrance to the establishment. The local trucks were required to have "Mistletoe Express" signs on them and to be painted the company colors.

Operational details at the terminals were covered by specific Mistletoe instructions relating to such matters as collection of delinquent accounts, maintenance of facilities, use of utilities, long distance telephone calls, waybills, shipping labels, rates, schedules, dress of workers, procedures for handling shipments for specific customers and specific types of merchandise, damage claims, and sales meetings. On damage claims the operator could settle if the claim was $5.00 or less but on larger amounts the matter was referred to Mistletoe headquarters. The operators were required to attend annual sales meetings conducted by Mistletoe supervisors who discussed solicitation of business and improvement of procedures.

Under the FLSA definitions an employer is one who acts "directly or indirectly in the interest of an employer in relation to an employee" with immaterial exceptions. The term employee "includes any individual employed by an employer." Employ "includes to suffer or permit to work." 29 U.S.C. § 203(d), (e), and (g). The Supreme Court has said that: "A broader or more comprehensive coverage of employees within the stated categories would be difficult to frame." United States v. Rosenwasser, 323 U.S. 360, 362, 65 S.Ct. 295, 296, 89 L.Ed. 301. Because of the breadth of the statutory definitions, cases such as United States v. Silk and its companion Harrison v. Greyvan Lines, Inc., both reported at 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757, arising under the Social Security Act, and Continental Bus System v. National Labor Relations Board, 10 Cir., 325 F.2d 267, are persuasive but not controlling.

We must turn for guidance to cases arising under FLSA. With reference to the wide scope of FLSA, we have said that "coverage is to be determined broadly by reference to the underlying economic realities rather than by traditional rules governing legal classifications of master and servant on one hand, and employer and independent contractor on the other." Walling v. Rutherford Food Corporation, 10 Cir., 156 F.2d 513, 516, modified on other grounds and affirmed 331 U.S. 722, 67 S.Ct. 1473, 91

L.Ed. 1772. That case was concerned with meat boners working in a slaughterhouse who furnished their own tools and who were paid collectively on the basis of weight of boned beef. The Supreme Court held that they were not independent contractors because their work "as a part of the integrated unit of production" made them employees of the establishment, Rutherford Food Corp. v. McComb, 331 U.S. 722, 729, 67 S.Ct. 1473, 1476, 91 L.Ed. 1772. Both parties in the instant case find comfort in our decision in Mitchell v. Hertzke, 10 Cir., 234 F.2d 183. It was concerned with the application of FLSA to migratory farm workers who were hired, supervised, and paid by a crew chief. We pointed out that under FLSA we were not limited to the common-law definition of the employer-employee relationship. In holding that the workers were not the employees of a canning company we noted that the company had no control over hiring and firing the workers.

The case at bar is more like Western Union Tel. Co. v. McComb, 6 Cir., 165 F.2d 65, cert. denied 333 U.S. 862, 68 S. Ct. 743, 92 L.Ed. 1141 (personnel in agency offices of a telegraph company), Burry v. National Trailer Convoy, Inc., 6 Cir., 338 F.2d 422 (workers in terminal of a transporter of house trailers), Schultz v. Cadillac Associates, Inc., 7 Cir., 413 F.2d 1215 (employment counsellors serving employment agencies), and Mitchell v. Railway Express Agency, D.C.Me., 160 F.Supp. 628 ("merchant agents" of railway express firm). As we read those decisions the determination of whether a worker is an employee within FLSA depends on the overall situation rather than on isolated circumstances.

■ The function of the terminal operations in question is to further the business of Mistletoe through competent disposition of existing business and solicitation of new business. Mistletoe owns and supplies the physical properties except for local trucks, directs the operational details, instructs on the solicitation of business, pays a weekly al-lowance plus a commission, and may terminate the operator's contract on ten days notice. The arguments that an independent contractor relationship is shown by the furnishing of local trucks, the hiring and firing of local workers, and the need to comply with regulations of federal and state agencies do not persuade us. The terminal operations are an integrated part of the Mistletoe transportation business. We believe that Mistletoe suffered and permitted the individuals in question to work at the terminals and, hence, they were Mistletoe employees within the FLSA definition. In our opinion the district court correctly held that those working at the terminals in question were employees of Mistletoe.

■ This conclusion makes necessary the consideration of the injunction issues. The trial court enjoined Mistletoe from future violations of the FLSA minimum wage, overtime, and record-keeping requirements. In taking this action the trial court did not specify the factors which it believed justified the injunction. Instead, it said that it thought the injunction was "mandatory under the law." This concept runs contrary to our decision in Mitchell v. Hertzke, 10 Cir., 234 F.2d 183, 186, where we held that coverage under FLSA "does not ipso facto require the court to grant an injunction against future violations, even in the face of past violation." The effort of the Secretary to explain away the court's statement does not impress us. Although the record shows confusion between the grant of an injunction respecting future conduct and an injunction relating to the continuation of past conduct, we are convinced that the trial court believed that it had to issue the future-conduct injunction. It failed to exercise its discretion. Such failure is error in a FLSA case relating to an injunction to prevent future violations. Buckley v. Wirtz, 10 Cir., 326 F.2d 838, 840.

The restitution injunction is another matter. On the basis of its holding that Mistletoe had acted in good faith, the

trial court refused to enjoin the continued withholding of past due wages. Here again we have a bitter dispute between counsel which tends to cloud the issue.

Mistletoe argues that the court had no jurisdiction to issue the restitution injunction because of the proviso in § 16(c) that denies the authority of the Secretary to bring an action for unpaid compensation, if requested to do so by an employee, when the case involves "an issue of law which has not been finally settled by the courts." The contention is based on the assumption that the independent contractor issue had not been finally settled in the courts.

■ We are not concerned with § 16(c). The Secretary brought this action under § 17, 29 U.S.C. § 217, which, as amended in 1961, gives district courts jurisdiction "to restrain violations of section 215 of this title, including in the case of violations of section 215(a) (2) [minimum wages and maximum hours] of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter" with exceptions not here pertinent. The purpose of the 1961 amendment and the congressional intent have been stated in Wirtz v. Malthor, Inc., 9 Cir., 391 F.2d 1, 3, and need not be reviewed. We are convinced that Congress intended that the back wages found to be due in a § 17 injunctive action would be restored without the necessity of suits by the individual employees under § 16(b), 29 U.S.C. § 216(b). Wirtz v. Marino, 1 Cir., 405 F. 2d 938, is not in point because it was a § 16(c) action. The district court had jurisdiction over the restitution injunction issue.

Mistletoe also says that a finding of back due wages is an essential precedent to a restitution injunction and the court made no such finding. The record shows that at each of the terminals, except Ada, the operator's wife worked with him under varying conditions and for varying hours but was paid no spe-

cific salary. The compensation received from Mistletoe by the operator was placed in a joint bank account of the operator and his wife. The trial court made no findings with respect to such husband and wife compensation. We are unwilling, on the record before us, to explore the intriguing question of whether there may be an allocation of income between them and, if so, the effect thereof on FLSA requirements.

■ The trial court specifically found that three employees, Timmons and Haws at Muskogee and Choate at Ada, were paid less than the statutory minimum wage, and that one employee, Coffey at Ada, was not paid the required overtime. The court's denial of the restitution injunction made unnecessary the computation of the specific amounts. The failure to arrive at a specific amount for each individual does not vitiate the finding that back wages were due.

The court specifically found that Mistletoe "has always acted in good faith" and that "an honest, sincere disagreement has been manifest at all times since the inception of the [FLSA] investigation * * *." Substantial evidence sustains these findings and we accept them. The question is whether good faith belief in non-coverage defeats the injunction.

■■ In essence Mistletoe says that it operated in the honest belief that its terminal operations were not within FLSA and that it is inequitable to penalize it now. We believe that the equities run the other way. The belief may have been honest but, as we have pointed out, it was mistaken. Some of the Mistletoe employees are entitled to wages which they have not received. The equities lie with them. Mistletoe should not be enriched by the retention of money which it should have paid in wages. The Fifth and Ninth Circuits have rejected the defense of good faith in actions for restitution injunctions under § 17. See Burk Builders, Inc. v. Wirtz, 5 Cir., 355 F.2d 451, 453; Shultz v. Parke, 5 Cir., 413 F.2d 1364, 1370,

and Wirtz v. Malthor, Inc., supra, 391 F.2d at 3. We agree with those decisions. By so doing we do not wish to be understood as holding that under § 17 a restitution injunction is mandatory in all cases. We believe that its grant or denial is dependent upon equitable considerations. In the case at bar those considerations favor the employees on whose behalf the Secretary is acting.

The amount of restitution must be determined by the trial court on remand. We express no opinion whether any compensation is due to the wives of the terminal operators. This unique problem deserves further study and a careful analysis of the facts.

The judgment is affirmed so far as FLSA coverage is concerned. The grant of the injunction relating to future actions is set aside because of the failure of the trial court to exercise the discretion which is imposed in it and the issue is remanded for the exercise of that discretion. The denial of the restitution injunction is reversed and the issue is remanded for further consideration in the light of this opinion. Each party will bear its own costs.