**Elizabeth DOLE, Secretary of Labor, United States Department of Labor, Plaintiffs/Appellants,**

v.

**Karen SNELL and Gerald Snell, individuals doing business as Cakes By Karen, Defendants/Appellees.**

**No. 87–1500.**

United States Court of Appeals, Tenth Circuit.

May 23, 1989.

Ellen R. Edmond (Tedrick A. Housh, Jr., Regional Sol., Henry C. Mahlman, Associate Regional Sol., George R. Salem, Sol. of Labor, Monica Gallagher, Associate Sol., Linda Jan S. Pack, counsel for appellate Litigation, and Anne Payne Fugett, Atty., on the briefs), U.S. Dept. of Labor, Washington, D.C., for plaintiffs/appellants.

Timothy LaQuey (Raymond J. Miller with him, on the brief), Denver, Colo., for defendants/appellees.

Cynthia G. Schneider, Migrant Legal Action Program, Inc., Washington, D.C., and David F. Steinhoff, Colorado Rural Legal Services, Denver, Colo., amicus curiae.

Before HOLLOWAY, Chief Judge, ANDERSON, Circuit Judge, and O'CONNOR,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

The sole issue in this case is whether cake decorators at a bakery known as "Cakes by Karen" are employees or independent contractors for purposes of coverage under the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. § 201, *et seq.* The district court held that they were independent contractors. We conclude that they are employees.

*  Hon. Earl E. O'Connor, Chief Judge, United States District Court, Kansas, sitting by designa-

## I.

Karen and Gerald Snell own and operate a bakery and decorated cake sales business called "Cakes by Karen." It is composed of one bakery and eight retail stores, one of which is connected to the bakery. The cake decorators in question, consisting of thirty-two individuals over the period of time at issue, decorated cakes at the bakery/retail store, which is located in Northglenn, Colorado. From that location they supplied all eight retail outlets.

After an investigation, the Department of Labor ("DOL") determined that the decorators were employees of the Snells, and sued to enjoin the Snells from violating the overtime and record keeping provisions of the FLSA (sections 15(a)(2) and 15(a)(5)), and to enjoin the continued withholding of overtime pay alleged to be due. R. Vol. I at Tab 1 (Complaint).

At trial, the DOL's case consisted of the testimony of Lisa Novak, one of the cake decorators, and Donald Klein, a compliance officer of the Wage and Hour Division of the DOL. The Snells did not call any witnesses, and rested their case after the presentation of the DOL's case. The parties stipulated that the testimony of Novak was representative of the method of payment and the type of work and circumstances of the other decorators. R. Vol. II at 47.

Novak began working at the bakery in August of 1982. When she started she had no prior experience or skills in cake decorating. She testified that new decorators without experience learned how to decorate cakes while on the job. She noted that "some" of the decorators took a decorating class. *Id.* at 7.

Novak testified that the Snells' cake decorators are paid on a piecework basis, by the cake. In 1983 the Snells established a pay sheet to determine the amount paid per cake. At the time it was established, the decorators were paid approximately 20% of the price of the cake. Novak testified that

tion.

at the present time their rate of pay is less than 20% of the price of the cakes because of rising prices. *Id.* at 14, 45.

The decorators have no say in determining the prices on the pay sheet or the prices of the finished products. R. Vol. II at 14. However, when they decorate cakes which are especially large or unusual they negotiate the rate at which they are paid. Novak testified that there were not "too many" of these unusual requests. *Id.* at 15. In most cases, the counter workers, who are employees of the Snells and who take in the orders, decide if the cake requires an extra decorating charge according to a few basic shop rules. If for some reason, the counter worker fails to place an additional charge on the cake, Karen Snell intervenes and pays the cake decorators an additional $2.00 per cake. *Id.* at 40.

Novak testified that the cake decorators are generally free to choose the cakes they wish to decorate. *Id.* at 12. However, the Snells determine who is to decorate the wedding cakes. *Id.* at 19.

The decorators are required to purchase some of their own equipment, including pastry bags, couplers, an air brush, books, spatulas, aprons, and towels. *Id.* at 18, 37. Such equipment costs approximately $400.00 per year. R. Vol. II at 18. The Snells supply everything else and pay all the operating expenses of the business. *Id.* at 19.

Novak worked an average of 50–60 hours a week at the bakery. *Id.* at 9. The number of working hours is determined in large part by the volume of orders for cakes that come in. The hours are much longer during holiday periods. *Id.* at 10–11. Although the decorators have some flexibility in determining their working hours, if they come in during the mornings they have to be in by 9:00 a.m. Generally, the Snells require that unless permission is obtained from Karen Snell to leave early, the decorators must stay until 6:00 p.m. or until all the cakes have been decorated.

The decorators are free to work for other employers. Novak testified that she works for a dairy approximately four times a year. *Id.* at 20, 45. The decorators are also free to decorate cakes at home for sale to third parties. Novak testified further that, although some decorators do decorate cakes at home, she chooses not to. *Id.* at 35–36.

## II.

■ Courts have adopted an expansive interpretation of the definitions relating to employment status under the FLSA,[1] in order to effectuate its broad remedial purposes. *See Patel v. Quality Inn South,* 846 F.2d 700, 702 (11th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1120, 103 L.Ed.2d 182 (1989); *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1058 (2nd Cir. 1988); *Donovan v. Williams Oil, Co.,* 717 F.2d 503, 504–05 (10th Cir.1983); *Real v. Driscoll Strawberry Associates, Inc.,* 603 F.2d 748, 754 (9th Cir.1979); *Shultz v. Mistletoe Express Service, Inc.,* 434 F.2d 1267, 1270 (10th Cir.1970). Courts are not limited by any contractual terminology used by the parties or by the traditional common law concepts of "employee" or "independent contractor." *McLaughlin v. Seafood, Inc.,* 861 F.2d 450, 452 (5th Cir. 1988), *modified,* 867 F.2d 875 (1989); *Donovan v. Williams Oil Co.,* 717 F.2d at 505. Rather, as we noted in *Doty v. Elias,* 733 F.2d 720, 722–23 (10th Cir.1984), the Supreme Court has directed that the economic realities of the relationship govern, and the focal point is "whether the individual is economically dependent on the business to which he renders service ... or is, as a matter of economic fact, in business for himself." *See Bartels v. Birmingham,*

---

**1.** Section 3 of the FLSA provides the following pertinent definitions:

(d) "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee....

(e)(1) ... the term "employee" means any individual employed by an employer.

....

(g) "Employ" includes to suffer or permit to work.

29 U.S.C. § 203.

332 U.S. 126, 130, 67 S.Ct. 1547, 1549, 91 L.Ed. 1947 (1947).

In *Doty* we listed five factors derived from *United States v. Silk*, 331 U.S. 704, 716, 67 S.Ct. 1463, 1469, 91 L.Ed. 1757 (1947), which courts generally consider in applying this test:

"(1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; and (5) the degree of skill required to perform the work."

*Id.* at 723. *See, e.g., Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947); *Brock v. Superior Care, Inc.*, 840 F.2d at 1058–59; *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir.1987), *cert. denied*, — U.S. —, 109 S.Ct. 243, 102 L.Ed.2d 232 (1988); *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d 1042, 1043 (5th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987); *Doty v. Elias*, 733 F.2d at 723; *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d at 754; *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1382 (3rd Cir.), *cert. denied*, 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985); *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir.1981). An additional commonly considered factor is the extent to which the work is an integral part of the alleged employer's business. *See, e.g., Brock v. Superior Care, Inc.*, 840 F.2d at 1059; *Sec'y of Labor v. Lauritzen*, 835 F.2d at 1535; *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d at 754; *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d at 1382; *Donovan v. Sureway Cleaners*, 656 F.2d at 1370.[2] It is well established that no one of these factors in isolation is dispositive; rather, the test is based upon a totality of the circumstances. *Rutherford Food Corp. v. McComb*, 331 U.S. at 730, 67 S.Ct. at 1477.

The parties disagree with respect to the standard of review which governs our analysis of this case. This circuit has not as yet explicitly articulated a standard of review governing FLSA cases. However, we believe the proper standard, followed by most courts, is that expressed by the Second Circuit in *Brock v. Superior Care, Inc.*, 840 F.2d at 1059, as follows:

"The existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts— whether workers are employees or independent contractors—is a question of law. Thus, a district court's findings as to the underlying factors must be accepted unless clearly erroneous, while review of the ultimate question of employment status is *de novo.*"

*See McLaughlin v. Seafood, Inc.*, 861 F.2d at 452; *Sec'y of Labor v. Lauritzen*, 835 F.2d at 1535; *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d at 1044–45; *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1327 (5th Cir.1985); *Castillo v. Givens*, 704 F.2d 181, 185–86 (5th Cir.), *cert. denied*, 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983); *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 471 n. 4 (11th Cir.1982).

### III.

The district court carefully addressed and made findings with respect to all but two of the factors listed above. Nevertheless, in each instance we are left with a definite and firm conviction that a mistake has been made, and that the findings are clearly erroneous. Specifically, we conclude that the circumstances of this case show that the cake decorators more closely resemble employees of this business than independent contractors engaged in their own business.

### A. Control.

The district court found that—

---

**2.** Although we did not list this factor in *Doty*, we implicitly considered it a determinative factor in *Shultz v. Mistletoe Express Service, Inc.*, 434 F.2d at 1271 ("The terminal operators are an integral part of the Mistletoe transportation business."). In any event, since factors such as the ones listed are simply analytical tools, their weight, number and composition are variable. All relevant evidence may be considered.

"Defendants lack significant control over the decorators' work. In particular, defendants do not establish rigid working schedules; thus, decorators are free, within limits, to determine their work hours. Neither do defendants oversee or supervise the actual decorating of cakes. Decorators select, design, and prepare cakes solely upon their skill and desire. Defendants merely inspect the finished product and see that it meets the established quality standards. Decorators are free to and do offer their services to outside and third parties while working for defendants. In fact, Ms. Novak occasionally works for a dairy."

R. Vol. I, Tab 2 at 8.

At trial, counsel for the Snells emphasized continually that these decorators enjoyed some flexibility in work schedules and choice of hours, and that they could choose their cakes and manner of decoration. R. Vol. II at 26, 29, 31, 32, 37, 39, 41, 42. Of course, flexibility in work schedules is common to many businesses and is not significant in and of itself. *See Doty v. Elias*, 733 F.2d at 723 ("A relatively flexible work schedule alone ... does not make an individual an independent contractor rather than an employee."). More to the point, however, the record does not support any inference that these decorators acted autonomously, or with any degree of independence which would set them apart from what one would consider normal employee status. Certainly the business operations were not subject to the whims or choices of the decorators. Quite the opposite was true. The demands of the business controlled the decorators.

The record establishes the following facts beyond reasonable dispute. The decorator work force consisted of never less than ten and up to fourteen individuals. R. Vol. II at 43. They work at separate tables in a single room at one location. *Id.* at 23. Novak testified that she worked ten to twelve hours a day, and fifty to sixty hours per week, five days a week. *Id.* at 8–9, 28. By preference, in the recent past she worked nights, alone, from 8:00 p.m. to approximately 6:00 a.m. *Id.* at 8. She was free to leave early only if there was "not a

ton of work to do." *Id.* at 29. Apparently the rest of the decorators worked days. They were *required* by Karen Snell to be at work by a time certain in the morning, at or before 9:00 a.m. *Id.* at 31. They punched a time clock before they began decorating in the morning, when they left for breaks, and when they finished decorating at the end of the day. *Id.* at 8. Undecorated cakes were placed on racks from which, at random, the decorators selected cakes which they wanted to decorate during the day. *Id.* at 12. But toward the end of the day when there were a limited number of cakes remaining, the decorators were required to work on those remaining cakes. *Id.*

The volume of cake orders determined the length of the work day, including long overtime hours whenever necessary. *Id.* at 8–12, 31–32. It was an absolute requirement that sufficient decorators stay to complete the cakes. *Id.* And, while the decorators might trade among themselves, or arrange with Karen Snell for early or normal time departure, it was out of the question for the entire work force, or any necessary part of it, to choose to leave before the cakes were done. *Id.* The workers were totally controlled in this regard. *Id.* Thus, on one holiday occasion the entire staff was required to work thirty-two hours straight because of an unexpected volume of orders. *Id.* at 10–11. On another occasion an individual was fired for refusing to work overtime on a Friday night. *Id.* at 12.

Vacations and any special work schedules or hours, or time off, were required to be approved by Karen Snell. *Id.* at 11, 41–42. The decorators worked without direct supervision, but Karen Snell was almost always there, and cakes deemed unsatisfactory by the Snells were rejected. *Id.* at 9, 12–13.

As the foregoing indicates, this, in fact, was a highly regulated work force absolutely controlled by the Snells with regard to the production and quality demands of the business. It is utterly inconceivable, for instance, that the Snells would have

tolerated a decorator work force composed of individuals who came and went as they alone pleased, leaving this volume-driven business with uncertainty in its production capacity. The following portions of Novak's testimony illustrate these points:

"THE COURT: You said 6:00 or 7:00 in the morning until everything was finished. What time would that be, please, ordinarily?

"THE WITNESS: Well, they don't stop taking orders. They have a series of other stores, and as long as they keep calling in the orders, the cakes have to be decorated, so say the other stores close at 6:00 o'clock, *you wouldn't be able to leave until everything was done.*

"If they call in an order at 6:00 o'clock, *you have to stay* and do those orders.

"THE COURT: What would your ordinary day be?

"THE WITNESS: Until about 6:00 in the evening.

BY MS. BISSEGGER:

"Q Okay. When you arrived in the morning, when did you punch the time clock?

"A When they put in the time clock we were instructed to come in , (sic) get all our equipment ready and punch the time clock when we started decorating. Then you would decorate, punch out for breaks, and then punch out and clean up your equipment and go home.

. . . .

"Q How many days a week did you work?

"A Five.

"Q And your average number of hours were per day?

"A Well, I would say an average number would be ten to twelve hours.

"Q Okay. Was Karen Snell present during the hours that you worked?

"A Most of the time.

. . . .

"Q Who informed decorators of their hours?

"A Well, if a decorator had a reason to leave then that was all right, but basically *the rules are,* you know, *the caks (sic)*

*have to be finished before you can go home.*

. . . .

"Q Who requested decorators to stay until all cakes were decorated?

"A Karen Snell.

"Q And when you needed to take some time off *from whom did you seek permission?*

"A *From Karen Snell.*

"Q Okay. If there were cakes to be done, and decorators wanted to leave before the cakes were done, how did Karen Snell react to that?

"A Well, as long as somebody was going to stay and finish them, the situation now they deliver right after—right in the evening. They used to wait until morning to deliver the cakes. So that *people had to stay and decorate the cakes until they were finished.*

"Now they deliver the cakes in the evening, and so you have to have a certain amount done before you can go, and *the basic rule is somebody has to stay and finish the work.*

. . . .

"A Well, *you have to be in by a certain time in the morning* if you work during the day. You have to be in by a certain time to get that day's cakes started so people don't come in to pick up their cakes and nobody has done them, *so you have to be there* by—some people prefer to come early, some people prefer to come in by 9:00 o'clock, but *somebody has to be there.*

"Q Well, is it fair that volume dictates?

"A Pretty much.

"Q Of necessity?

"A The amounts of hours you have to stay, sure.

"Q Okay. Now, you testified regarding St. Patrick's Day and an all night.

"A Um-hm.

"Q Is this common?

"A Well, when I worked during the day, *it was common you would have to stay until pretty small hours in the morning,* but that's the only time I had stayed all night and into the next day."

. . . .

"Q So really one can't make any broad generalizations?

"A As to the hours that one works, no, it can fluctuate a great deal.

"Q Is that pretty much up to the decorators?

"A Well, *the decorators*, of course, *want to work*, you know, *at least a normal number of hours a week*, and so they are there and they are available to work, and the only time that *you have to work*, you know, *overtime or extra hours* or whatever you want to call it is *when you have got a lot of orders.*

"Q Okay. But sometimes it can work just the opposite?

"A It can work the opposite, and there can be nothing to do and you can stand around.

"Q *Are you free to leave?*

"A Well, *no, somebody has to be up there until 6:00 o'clock* in case an order comes in for a cake to be decorated, but say on Monday it won't be as busy because people order cakes for Saturday, so Fridays people put in a lot of hours so on Monday everybody can clean up and leave by 7:00 and you can go home."

R. Vol. II at 8, 9, 10, 11–12, 31–32, 38–39 (emphasis added).

Under circumstances involving considerably more latitude and less supervision than that demonstrated in the case before us, the Supreme Court determined that homeworkers can be employees within the FLSA, stating: "[The workers] are regimented under one organization, manufacturing what the organization desires and receiving the compensation the organization dictates.". *Goldberg v. Whitaker House Cooperative*, 366 U.S. 28, 32, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961). *See Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d at 1384. *See also McLaughlin v. Seafood, Inc.*, 861 F.2d at 452; *Real v.*

*Driscoll Strawberry Associates, Inc.*, 603 F.2d at 756; *Silent Woman, Ltd. v. Donovan*, 585 F.Supp. 447, 450–51 (E.D.Wis. 1984).

The record does support the district court's finding that the decorators were free to offer their services to third parties while working for the Snells, and did so. However, they did so to a virtually insignificant degree insofar as there is anything shown in the record, with no indication of any income from such activity, and, in any event, nothing to indicate that incidental decorating for others involved an effort greater than might be done by any employee on his or her own time after hours, on weekends, or days off. R. Vol. II at 35–36. Thus, Novak testified that although she is free to work for other employers she has only worked for one other employer, Wheatridge Dairy, and only does so four times per year. R. Vol. II at 19–20, 45. She also testified that although she is free to decorate cakes at home for sale to third parties, she chooses not to. R. Vol. II at 35–36.[3] Under these circumstances we apply the rule that: "[I]t is not what the [workers] *could* have done that counts, but as a matter of economic reality what they actually *do* that is dispositive." *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d at 1047.

In short, the individuals in question were basically hiring out their labor. In doing so, they were regimented with respect to the time and place, and, in essential respects, as to the quality and the manner in which they performed that labor. It is virtually impossible to look upon these individuals as having the independence which characterizes a person conducting their own business.

B. Opportunity for Profit or Loss.

The district court found that: "Essentially, decorators determine their wages and

**3.** The record does not indicate whether Novak used her cake decorating skills at the Wheatridge Dairy. If she did not, then this additional employment would be more like a second job than an example of an independent contractor performing her work for different employers. This other work may have minimally supplemented Novak's income but "minor additional income made from work which is not connected with the actual business under examination is not relevant to a court's determination of employee status." *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d at 1049 (citing *Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308, 1313 (5th Cir.), *cert. denied*, 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976)).

thus control their profit potential. Decorators decide their hours, choose which cakes to decorate and are compensated at approximately 20% of the cake's cost, and negotiate prices on large or unique cakes." R. Vol. I, Tab 2 at 8.

As previously indicated, these individuals are paid on a piecework basis, by the cake. Thus, it is true that the more cakes a decorator can do, the more the decorator will make. But toiling for money on a piecework basis is more like wages than an opportunity for "profit." *See Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d at 1050–51; *Usery v. Pilgrim Equipment*, 527 F.2d at 1313. *See also Rutherford Food Corp. v. McComb*, 331 U.S. at 730, 67 S.Ct. at 1477. Clearly, these individuals did not share in the profits of this business. Although, as the district court noted, the decorators were paid approximately 20% of the price of each cake, that was only in 1982 and for a short time thereafter. As time went on, the prices of the cakes changed, but the amount received by the decorators did not, and the decorators had no input whatsoever into the amount which they were to receive for each cake except on the rare occasion where an unusual cake was involved. R. Vol. II at 14–15. Novak's testimony in this regard is significant:

"Q How are you paid at Cakes by Karen?

"A I am paid by the cake.

"Q Were you always paid during your term of employment—did the pay structure ever change?

"A When I first started, we were paid twenty percent of each cake, and then the cakes over the last five years, the retail price of cakes has risen, but our wage has stayed the same as when I first started.

"Q Ms. Novak, could you please refer to Exhibit Number 1, please. Could you identify that for me?

"A This is the sheet that determines the amount we get paid for each cake.

"Q And were you always paid on the basis of that sheet?

"A No. This is within the last two years we were given this.

"Q To whom did the pay sheet apply?

"A The decorators.

"Q To all decorators?

"A To all the decorators.

"Q What, if any, say did you have in setting the price on this decorator's pay sheet?

"A This was news to me. I had no say in this at all.

"Q What, if any, say did you have in setting the retail price of the cakes?

"A None.

"Q Did you have the opportunity to bargain or discuss any of the prices with the Snells?

"A Well, at present, if I do a cake that's an especially large cake or an especially strange cake, we do a lot of real strange cakes, and if you do something like that, there is really no set price for that, and I can say well, I think my time is worth such and such an amount, and you can pretty much set what you are going to get paid, *but that's rare; usually get paid by what's on this sheet.*

"THE COURT: What do you mean by strange cakes, unique cakes?

"THE WITNESS: Well, really large cakes or a cake shaped like a building or something dumb.

"THE COURT: Like a courthouse or a football field, something irregular like that?

"THE WITNESS: Yes, something very much out of the ordinary.

"THE COURT: Many orders were like that?

"THE WITNESS: No, *there aren't too many, but that at that time is the only time I really set the rate that I make on a cake,* because it's something you haven't done before. If you put five full sheets together to decorate it and look like a boat, there is no set price for something like that."

R. Vol. II at 13–15 (emphasis added).

With respect to the things upon which the volume of cakes depended, such as the number of retail outlets, and the quality and attractiveness of their decor, the selection and efficiency of the counter help,

advertising for the business, the quality of the ingredients in the cakes, and so forth, the decorators had absolutely no input. Nor did they have any say with respect to the quality of their fellow workers or their finished products. In short, the decorators had no control over the essential determinants of profits in a business, and no direct share in the success of the business. Their earnings did not depend upon their judgment or initiative, but on the Snell's need for their work.

See Robicheaux v. Radcliff Material, Inc., 697 F.2d 662, 666–67 (5th Cir.1983).

Furthermore, there was no way that the decorators could experience a business loss. A reduction in money earned by the decorators is not a "loss" sufficient to satisfy the criteria for independent contractor status. Sec'y of Labor v. Lauritzen, 835 F.2d at 1536. Certainly, the decorators did not undertake the risks usually associated with an independent business.

### C. Investment in the Business.

The district court found that the "decorators initially invest $400 in equipment and approximately the same sum every year thereafter. Defendants simply provide icing, tables, turntables, mats, and a copy cake machine. Except for the icing, decorators are, therefore, capable of decorating defendants' cakes without these items." R. Vol. I, Tab 2 at 8–9.

Courts have generally held that the fact that a worker supplies his or her own tools or equipment does not preclude a finding of employee status. See Rutherford Food Corp. v. McComb, 331 U.S. at 725, 67 S.Ct. at 1474 (meat boners own their own hooks, knives, and leather belts (aprons) and were still found to be employees); McLaughlin v. Seafood, Inc., 861 F.2d at 451 (seafood processors supply their own hairnets, aprons, gloves and seafood knives); Sec'y of Labor v. Lauritzen, 835 F.2d at 1537 (pickle pickers provide their own gloves); Robicheaux v. Radcliff Material, Inc., 697 F.2d at 666 ("Although each of the welders had invested his own money in purchasing a welding machine, the district court concluded that a relatively minor portion of

the compensation was paid to the employees based upon their furnishing the equipment and that the major part of the compensation was paid for the services of these ... employees."); Real v. Driscoll Strawberry Associates, Inc., 603 F.2d at 752 (migrant farmworkers furnish their own hoes, shovels, pruning clippers and hand carts); Donovan v. Tehco, Inc., 642 F.2d 141, 143 (5th Cir.1981) (worker supplies hand tools); Schultz v. Mistletoe Express Service, Inc., 434 F.2d at 1270–71 (terminal operators furnish local trucks); Silent Woman, Ltd. v. Donovan, 585 F.Supp. at 451 (Seamstresses who work at home and supply their own sewing machines are considered employees. "The only 'expenditure' for which the ... seamstresses obtain a return is their own labor.").

The fact is that these decorators had no investment at all in the Snell's business, as such. As Novak testified:

"Q Did you invest or how did you invest in the business of the Snells?

"A No, I haven't invested in the business."

R. Vol. II at 17. The Snells maintained the eight retail outlets and the bakery, including the making of lease payments for the physical facilities. They supply the cakes, the icing, novelty items to be put on the cakes, doilies, boxes and boards, and provide a copy cake machine (to shine pictures on the cakes), food coloring, a set of pictures, turntables, and mats to stand on. R. Vol. II at 18–19, 46. They pay all the advertising and other operating expenses of the business including phone service, utilities, water, counter help, and all other necessary help. As courts have noted, the "investment," which must be considered as a factor is the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself. The relative investment of the decorators in their own tools compared with the investment of the Snells simply does not qualify as an investment in this business. See Brock v. Mr. W. Fireworks, Inc., 814 F.2d at 1052; Sec'y of Labor v. Lauritzen, 835 F.2d at 1537. And, comparing the decorator's $400.00 annual investment to their annual income suggests no

different conclusion. Novak earned approximately $25,000 per year, which was above average, R. Vol. II at 27, but one would hardly refer to such income as the return on an annual investment of $400 in tools or equipment.

## D. Skill.

With regard to the factor concerning the skill of the decorators the district court held that "[a]lthough not every decorator is highly skilled when starting, through native ability, time, and experience, decorators acquire and develop the necessary skills to design and decorate cakes according to the customer's wishes." R. Vol. I, Tab 2 at 8. Although this finding is certainly not clearly erroneous it is nonetheless irrelevant in determining whether the cake decorators are employees or independent contractors. As the court noted in *Sec'y of Labor v. Lauritzen*, 835 F.2d at 1537: "[T]his development of occupational skills is no different from what any good employee in any line of work must do."

The lack of the requirement of specialized skills is indicative of employee status. *Doty v. Elias*, 733 F.2d at 723. Novak's testimony makes it clear that the Snells do not require the decorators to have any specialized skills or prior experience when they start to work for the Snells. R. Vol. II at 6. They merely develop their skills on the job. *Id.* at 30.

The district court found that the "majority of the decorators have at the very least taken a course in cake decorating." R. Vol. I, Tab 2 at 2. Because Novak, whose testimony was stipulated by the parties to be representative of the group of decorators, testified that she had no experience in cake decorating when she started and that only "some" of the decorators had taken a class, this finding is clearly erroneous.

## E. Permanence of the Working Relationship.

Although the district court listed the permanence of the working relationship as a factor in determining employee status, it made no findings regarding this factor. "Independent contractors" often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas "employees" usually work for only one employer and such relationship is continuous and of indefinite duration. *Donovan v. Sureway Cleaners*, 656 F.2d at 1372.

A careful examination of the record indicates that with regard to this factor the cake decorators are much more like employees than independent contractors. Novak testified that she had been working for the Snells for approximately four and a half years. R. Vol. II at 5. At the time she started working for the Snells she expected to work there "indefinitely." R. Vol. II at 20. She works an average of 50–60 hours a week at the bakery.[4] R. Vol. II at 9. *Cf. Brock v. Superior Care, Inc.*, 840 F.2d at 1060 (transient nurses who work for several employers found to be employees); *Sec'y of Labor v. Lauritzen*, 835 F.2d at 1537 (seasonal migrant farmworkers found to be employees).

## F. Integral Part of the Business.

As mentioned earlier, in determining employee status many courts have examined whether or not the type of work performed by the alleged employees is an integral part of the business. *Rutherford Food Corp. v. McComb*, 331 U.S. at 726, 67 S.Ct. at 1475; *Brock v. Superior Care, Inc.*, 840 F.2d at 1059; *Shultz v. Mistletoe Express Service, Inc.*, 434 F.2d at 1271.

Although the district court did not address this factor, the work performed by the decorators is obviously integral to the business of the Snells. The Snells, as indicated by the name of their company, "Cakes by Karen," are in the business of selling cakes which are custom decorated.

---

4. As discussed above, Novak also sometimes works at the Wheatridge Dairy. This is relevant here because it relates to the issue of economic independence. However, because Novak works 50–60 hours a week for the Snells and only four times a year for the dairy it is clear that her relationship with the Snells is "permanent" and that she is economically dependent on her employment there.

**812**

## IV.

Our consideration of the relevant factors in the discussion above indicates that the cake decorators, as a matter of "economic reality," are "economically dependent" on the business to which they supply their services and are therefore "employees," not "independent contractors," within the protection of the FLSA. We therefore RE-VERSE the judgment of the district court and REMAND for further proceedings.