**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THOMAS R. DUBOIS; ANTONIA
DUBOIS; HOUNT BATES; JANET
PEARSON; AMJED ALI RASHEED;
DELORIS REED; NIAMATULLAH AZIZI;
MACK EARL STACKHOUSE;
KAREEM D. HOLMES; MOHAMMAD S.
MOFIDI; RONALD F. SCOTT;
ANDRE M. EVANS; JULIA BARTEE;
JOHN D. PARKER; PATRICIA ANN LOY;
CEBRON LETERRIA EVANS; MICHAEL
LIPFORD; STACY STACKHOUSE; FADI
HADAD; TRACIE P. STACKHOUSE;
BOONLERT VARAPUNYO; SIRIPHAN
KANIA VARAPUNYO; NATALIE DAWN
WICKER; TASHIA DIXON; VALERIE
LOVATO; VERONICA RESHEA ROGERS;

KEVIN ARTHUR JOHNSON; ELIDA
STARKER; SABRINA WICKER; ALIC
MIRSAD; LASTENIA A. RILEY; FELIX
BERNARDO LUGO; VINCE M.
SANTULLO; KHIEN T. LE; HAROON
MOFIDI, for themselves and other
employees similarly situated at the
Fort Belvoir Commissary,
<u>Plaintiffs-Appellants,</u>

and

DONALD D. TONEY; AMI K.
ANTONIOLI; DANIEL JAMES NORTON;
CALVIN LEE PARKER; MAL YON
WHITE; IMAD B. RASHEED; WATT
JUNIOR LEMAY; JAMES R. NEWSOME;

No. 97-2074

KENNETH PAUL JONES; HOWARD W.
WELLS; GODFREY S. HASSAN; NAJAT
DOUBY HASSAN; BRENDA L. COLON;
NEKITA DESHAVONE BISHOP; ARTEBIA
ARMWOOD; PRAKOB NARASRI; BUNCHA
NARASRI; BAMRONG THEMRATANA;
WILLIAM L. LAMBERT; MAURICE
HARRIS; TAMIKA THOMAS; JERMAINE
AARON THOMAS; MARVIN J.
WORTHEM; RUSSELL E. MCCOY;
ANTHONY A. SANDERS; OK CHA
HAVERTY; DOUGLAS NEWMAN
HAVERTY; BARBARA JEAN SHIFFLETT;
MOHAMMAD A. MAFIDI; ROY
CARTER; WALLAPHIS SARANWANICH;
JANSUDA PITUKNARATHAM; SHELDON
ARMSTRONG; DIEN H. NGUYEN;
PUANGPET PHERSHAYAPHAI,
<u>Plaintiffs,</u>

v.

SECRETARY OF DEFENSE; RICHARD E.
BEALE, Director, United States
Defense Commissary Agency;
THOMAS M. BRADY, Commander,
United States Army Garrison, Fort
Belvoir,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-96-1105-A)

Argued: May 7, 1998

Decided: September 3, 1998

2

Before MURNAGHAN and WILKINS, Circuit Judges, and
BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion. Judge Murnaghan
wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Claude David Convisser, Alexandria, Virginia, for Appel-
lants. Thomas Mercer Ray, Special Assistant United States Attorney,
Alexandria, Virginia, for Appellees. **ON BRIEF:** Helen F. Fahey,
United States Attorney, Alexandria, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiffs-appellants worked at the Fort Belvoir Commissary (the
"Commissary") as grocery baggers ("baggers"). They seek a declara-
tion that they are "employees" of defendant-appellee, the Secretary of
Defense (the "Secretary"), pursuant to the Fair Labor Standards Act
("FLSA"), 29 U.S.C. §§ 201 et seq. Plaintiffs, whose only compensa-
tion consists of tips from Commissary customers, contended the Sec-
retary violated FLSA by failing to pay them minimum wage and
overtime pay. Following a bench trial, the district court denied their
claims. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we
affirm.

Appellants contend the district court erred in holding they failed to demonstrate they were "employees" for purposes of FLSA. We review the district court's findings of fact for clear error. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 713 (1986) ("[F]acts necessary to a proper determination of the legal question whether an exemption to the FLSA applies . . . should be reviewed by the courts of appeals pursuant to [Federal Rule of Civil Procedure] 52(a)."). Under the "clearly erroneous" standard, we must accept the district court's findings of fact unless upon review we are"left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Whether plaintiffs should be excluded from FLSA coverage and benefits is a question of law that we review de novo. Icicle Seafoods, 475 U.S. at 714.

Appellants contend they satisfy the "economic reality" test set forth in Bartels v. Birmingham, 332 U.S. 126 (1947), and United States v. Silk, 331 U.S. 704 (1947). Under FLSA, "employees are those who as a matter of economic reality are dependent upon the business to which they render service." Bartels, 332 U.S. at 130. In determining whether individuals are "employees" under FLSA, we consider the degree of control exercised by the employer over the workers; the workers' opportunity for profit or loss and their investment in the business; the degree of skill and independent initiative required to perform the work; the permanence or duration of the working relationship; and the extent to which the work is an integral part of the employer's business. Silk, 331 U.S. at 716-17 (cited in Brock v. Superior Care, Inc., 840 F.2d 1054, 1058-59 (2d Cir. 1988)); Garrett v. Phillips Mills, Inc., 721 F.2d 979, 981-82 & n.5 (4th Cir. 1983) ("economic reality" test applies to FLSA claims). The "economic reality" test is based upon the totality of the circumstances, and no single factor is dispositive. Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947). Appellants challenge the district court's findings of fact and conclusions of law with respect to the five Bartels/Silk factors; we consider each factor in turn.

With respect to control, the district court found that the degree of control exercised by the Defense Commissary Agency ("DeCA") managers over plaintiffs was negligible. The district court found the testimony demonstrated that the baggers elected a head bagger who

4

supervised them and that the baggers voluntarily paid a fee for the privilege of working as baggers. The head bagger was responsible for scheduling, hiring, firing and disciplining baggers. The district court found plaintiffs failed to demonstrate the election of the head bagger was a "sham election." The district court acknowledged there was evidence that "on occasion certain baggers were asked by DeCA managers to perform tasks such as cleaning and emptying trash in the checkout area where the baggers work and that on one occasion a bagger was asked to scrape dried chewing gum from the parking area." The district court found these requests were made infrequently and "often when a DeCA manager noticed that baggers were not attending to trash or a spill that had recently occurred." The district court also held that evidence that baggers were required by DeCA to wear uniforms and to load bags so that groceries were not crushed did not evince control by DeCA. The district court concluded the evidence "simply shows that DeCA managers were attempting to ensure that baggers did not detract from or otherwise disrupt Commissary operations."

Appellants contend the district court erred. They claim the Secretary controlled baggers' work conditions by controlling the head bagger, prescribing the policies and rules that the baggers must follow and compelling baggers to perform work tasks for which they do not receive tips. Although appellants cite to evidence that tends to support their assertions, there is also evidence to the contrary. For example, the Commissary manager testified that the head bagger worked for the baggers, trained the new baggers and arranged their schedules and that baggers were not directed or required by Commissary management to perform maintenance tasks. In light of the deferential standard of review, we cannot characterize the factual findings of the district court as clearly erroneous.

The next factor, the baggers' opportunities for profit and loss and their investment in their business, was found by the district court to indicate plaintiffs were not "employees." The district court found that although the baggers' investment in their business was not "great," their opportunity for profit or loss was found to be "entirely dependent on the baggers themselves."

Appellants challenge this finding. Appellants contend their tips were a function of the volume of customers passing through their

5

assigned lane, as determined by whether management chose to keep the particular lane open and the speed with which the cashier worked. Appellee contends baggers have opportunity for profit and loss based on the strength of their own self-employment and their investment of time and energy put into bagging. Appellee asserts the Commissary simply allowed the baggers space on the premises and bagging materials with which to bag groceries for patrons. In light of the fact there is evidence tending to support both appellants' and appellee's views, the district court's determination concerning plaintiffs' opportunity for profit and loss is not clearly erroneous.

With respect to the baggers' initiative, the district court found that the duties of a bagger required independent initiative. The district court referred to the fact that in order to become a bagger, an individual had to apply for a license and to submit to a background investigation. In addition, baggers had to arrange scheduling with the head bagger. The district court acknowledged that baggers' duties did not involve great skill.

Appellants assert the district court erred with respect to these findings concerning initiative. They contend that the reasons cited by the district court as reflecting initiative--baggers had to apply for the job and show up for work on their scheduled shifts--are insufficient to demonstrate initiative. Appellants argue that if these reasons sufficed to demonstrate initiative, then a worker in virtually any job would be considered an independent contractor. This argument is somewhat persuasive, but it does not compel reversal because no single Bartels/Silk factor is dispositive. Rutherford Food Corp., 331 U.S. at 730.

With respect to the permanence and duration of the working relationship, the district court found that baggers determined when and how long they wished to work. Baggers could work for months at a time without a day off or could take several months off and then return to work. Appellants contend the district court erred because baggers considered themselves, and the Secretary treated them as, permanent employees. Appellants point to the fact that baggers who failed to report to work at scheduled times were subject to discipline and that baggers were required to report to work on time and to remain there until the end of their shift. We agree with the district

6

court's determination that baggers' flexibility in scheduling indicates they are not employees.

With respect to the final factor, the district court determined the work performed by the baggers was not an integral part of the Commissary's business. The district court found that the Commissary's "mission" was the sale of groceries and that the services performed by baggers constituted a convenience for patrons who had already purchased groceries. The baggers' functions were found nonessential for the sale of groceries.

Appellants contend their work is an integral part of the Commissary's business. They cite to evidence indicating that baggers performed a necessary function at the Commissary and that without them there would be gridlock. Appellants also point out that their work was physically integrated into the Commissary premises and operation. Other evidence, however, suggests that appellants' work was not an integral part of the Commissary's business. For example, there was evidence that the baggers satisfied the need of the patrons, not of the Commissary. The district court's resolution of this issue was not clearly erroneous.

Because we affirm the district court's decision that plaintiffs are not Commissary employees under FLSA, we do not address plaintiffs' other contentions.

AFFIRMED

MURNAGHAN, Circuit Judge, dissenting:

The five factors set forth in United States v. Silk, 331 U.S. 704, 716 (1947), give structure to our analysis of whether a group of individuals are employees for purposes of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19. The touchstone of our inquiry, however, is whether the alleged employees are, "as a matter of economic reality . . . dependent upon the business to which they render service," Bartels v. Birmingham, 332 U.S. 126, 130 (1947), or in business for themselves. Dole v. Snell, 875 F.2d 802, 804 (10th Cir. 1989). Therefore, no individual factor is dispositive, "nor can the collective

7

answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor--economic dependence." Usery v. Pilgrim Equip. Co., 527 F.2d 1308, 1311 (5th Cir. 1976); see Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185, 1189 (5th Cir. 1979) ("It is often possible for both sides to point to the presence or absence of particular Silk factors. Yet such an attempt to apply mechanically the components of Silk represents a distortion of that case."). After reviewing the five Silk factors with appropriate emphasis on the question of economic dependence, I am compelled to conclude that a number of the district court's factual findings are clearly erroneous, and that the baggers at the Fort Belvoir Commissary ("Commissary") are employees entitled to FLSA coverage. Commissary baggers are not autonomous entrepreneurs who operate independent businesses. Instead, baggers are closely supervised, unskilled laborers who earn compensation by performing tasks that are essential to the efficient operation of the Commissary. Therefore, I dissent from the majority's holding that the baggers are not employees.[1]

I cannot agree with the district court and the majority that the United States Defense Commissary Agency ("DeCA") exercised only "negligible" control over the baggers. To the contrary, Commissary managers had a duty to control and manage the bagger operation. See Bartels, 332 U.S. at 129 (control is "the right to direct what should

_____

[1] Because the majority holds that the baggers are not employees covered by the FLSA, neither they nor I address the scope of a 1978 amendment to the FLSA which excepted individuals performing "bagger or carryout service" for commissary patrons from the definition of employee. Department of Defense Appropriation Authorization Act of 1979 § 819, 29 U.S.C. § 203 note. Were we to reach the question, I would be inclined to hold that the baggers are entitled to FLSA coverage at least to the extent they performed non-tipped tasks which did not constitute "bagger or carryout service," such as mopping floors.

In the context of our present inquiry, I think it noteworthy that the 1978 amendment was passed in the wake of a controversial finding by the Civil Service Commission that commissary baggers were employees under the Silk economic realities test. See A Bill to Amend the Fair Labor Standards Act: Hearings on H.R. 6256 Before the Subcomm. on Labor Standards of the House Comm. on Educ. and Labor, 95th Cong. 26-27 (1976).

8

be done and how it should be done"). Commissary manager Raymond Lane testified that he was responsible for "quality assurance" in the bagger operation, and that his duties encompassed oversight of the bagger program. Lane's testimony was consistent with a DeCA "Talking Paper on Commissary Baggers," which commanded Commissary managers to "[c]ontrol and manage the bagger program," while reminding Commissary officials to exercise control indirectly, through the head bagger.[2] Lane asserted that he was obligated, as was any Commissary manager, to address problems with the bagger operation, such as double bagging, improper bagging methods, baggers "idling about," or spills and breakage, by speaking to the head bagger or directly to the baggers. While DeCA managers had infrequent direct contact with baggers, there was substantial evidence that managers frequently gave instructions to the head bagger regarding detailed aspects of the bagger program. According to Lane, the baggers invariably carried out his instructions.

DeCA also exercised substantial control over the baggers' work hours. Managers were required to ensure that sufficient baggers were on duty during the Commissary's hours of operation, and communicated those requirements to the head bagger who then scheduled the specified number of baggers. Once scheduled to work, baggers were subject to discipline for failing to report for their shift or leaving before the end of the shift, even if management closed the checkout lane to which the bagger had been assigned. The Commissary bagger Standard Operating Procedure ("SOP"), issued by DeCA, commanded baggers to "[b]e at work on time," cautioned that "[b]aggers who fail to report to work at scheduled times or dates will be subject to discipline," and forbade baggers to leave their bagging assignment without approval.

The DeCA bagger SOP also contained detailed regulations of bagger attire and behavior. DeCA required that baggers wear uniforms, and baggers were disciplined for failure to comply with the uniform requirement. Although baggers voted on the uniform, the bagger SOP gave Commissary management the authority to approve or disapprove the baggers' selection. The bagger SOP instructed baggers to "[u]se

_____

[2] "It's business as usual -- controlling baggers through the head bagger."

9

proper grooming" and "demonstrate proper manners," and forbade them to wear "exposed hair curlers," to "wave or summon patrons to their particular checkout counter," to talk loudly, and to speak at length with the cashier.

DeCA's control over the baggers is not rendered insubstantial merely because DeCA delegated some supervisory authority to the head bagger. DeCA's bagger SOP contained precise instructions regarding the head bagger's duties. Although the head bagger had initial responsibility for supervising the baggers' work, Commissary management had a duty to rectify any problems not identified or corrected by the head bagger. And while the head bagger had some disciplinary authority, the bagger SOP entrusted Commissary managers with the duty officially to reprimand baggers. Commissary officials had the sole authority to revoke or suspend a bagger's license. In short, DeCA exercised significant control over virtually every aspect of the baggers' work.

With respect to the baggers' opportunity for profit and loss and their investment in the business, the district court concluded that the bagger's opportunity for profit or loss was "entirely dependent on the baggers themselves." That finding cannot be reconciled with evidence that the baggers' ability to earn tips was substantially affected by the number of open checkout lanes, the efficiency of cashiers, and the volume of customers in the store. Baggers had almost no control over the number of Commissary patrons for whom they bagged groceries, but only over the manner in which they interacted with the customer and performed the service. I am unconvinced, moreover, that the bagger's tip income is properly characterized as "profit." Compensation derived from labor is not commonly referred to as"profit," but as wages.

The baggers had no investment in the bagging operation or the business of the Commissary. "[T]he `investment' which must be considered as a factor is the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself." Dole, 875 F.2d at 810; see Usery, 527 F.2d at 1313-14. And, having invested nothing but their labor, the baggers had no way to suffer a loss in the conduct of their allegedly independent business.

10

"A reduction in money earned . . . is not a `loss' sufficient to satisfy the criteria for independent contractor status." Dole, 875 F.2d at 810.

The district court correctly concluded that bagging required no specialized skills, but found that baggers exercised a "not insignificant" degree of independent initiative. The court based its conclusion on evidence that individuals must obtain a license before working at the Commissary, submit to a background investigation, and arrange with the head bagger to be placed on the schedule. Any person who desires employment, however, must apply for it, and any civilian who wishes to work at the Commissary must obtain permission to enter the installation and submit to a background check. The record does not support a finding that the baggers acted "`with any degree of independence which would set them apart from what one would consider normal employee status.'" Baker v. Flint Eng'g & Constr. Co., 137 F.3d 1436, 1441 (10th Cir. 1998) (quoting Dole, 875 F.2d at 806).

The general test of permanency is whether the alleged employees have a continuous, indefinite relationship with the business they serve, or whether they have fixed employment periods and transfer from place to place. See id. at 1442. Commissary baggers do not perform an isolated, finite task, but are hired by the Commissary for an indefinite period. A number of baggers testified to a lengthy and continuous working relationship with the Commissary. Although some baggers worked at other jobs, there was no evidence that baggers marketed their services as baggers to other commissaries or commercial grocery stores. Some flexibility in work schedules does not make baggers independent contractors rather than employees. Doty v. Elias, 733 F.2d 720, 723 (10th Cir. 1984).

Finally, the record fails to support the majority's conclusion that the baggers were not an integral part of Commissary operations. Lane testified that baggers were a "necessary" part of the Commissary operation and agreed that the Commissary would "grind to a halt" without the baggers. Walter Harris, a Commissary officer, agreed that baggers were an integral component of the business. Although Harris said that the Commissary could function if baggers failed to report to work, he explained that "[w]e would have to pull people from somewhere" on the installation to bag groceries. Philip Koren, DeCA's Deputy General Counsel for Personnel, testified that the likelihood of

11

gridlock would be high without baggers. The fact that DeCA officials perceive baggers as providing an added convenience to patrons does not contradict or undermine their testimony that the bagging operation was necessary at the high-volume Commissary. The purpose of the Commissary is to provide a benefit to its patrons; baggers play an integral role in achieving that goal.

In sum, I believe the majority's conclusion that Commissary baggers are independent business owners and operators is unfounded. The only indicia of independence is the baggers' limited flexibility in determining their work schedules. Otherwise, baggers have none of the independence or autonomy that characterizes independent contractors. They are, instead, regimented and unskilled workers who labor for meager compensation. Because I believe the Commissary baggers are employees within the meaning of the FLSA, I would reverse and remand for further proceedings.

12