**BREAUX AND DAIGLE, INC.,**
Plaintiff–Appellant,

v.

**UNITED STATES of America,**
Defendant–Appellee.

No. 89–3364
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 4, 1990.

Peter J. Losavio, Jr., Baton Rouge, La., for plaintiff-appellant.

John P. Volz, U.S. Atty., New Orleans, La., Gary R. Allen, Chief, Appellate Section, Tax Div., Regina S. Moriarty, Dept. of Justice, David J. Pincus, Deborah Swann, Washington, D.C., for defendant-appellee.

Before WILLIAMS, SMITH and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

Breaux and Daigle, Inc. appeals from the district court's judgment denying its request for a tax refund and ordering it to pay social security and unemployment insurance taxes assessed by the Internal Revenue Service. We affirm.

Breaux and Daigle is a Louisiana corporation which processes and sells crab meat. Crab meat pickers work at Breaux and Daigle's processing plant separating cooked crab meat from its shell. Prior to January 1, 1984, Breaux and Daigle treated the crab meat pickers as employees for tax purposes. However, in 1984 Breaux and Daigle supplied its crab meat pickers with forms, which they signed, stating that they would thereafter be treated as independent contractors and would be responsible individually for the payment of social security and unemployment taxes.

The IRS subsequently determined that the crab meat pickers were employees of Breaux and Daigle under the provisions of the Federal Insurance Contributions Act (FICA)[1] and the Federal Unemployment Tax Act (FUTA)[2] and assessed social security and unemployment taxes for 1984 and 1985. Breaux and Daigle paid a small portion of the assessment and filed a refund claim. When the IRS disallowed the claim, Breaux and Daigle filed suit in the district court to recover the amount paid, and the IRS counterclaimed for the remaining unpaid taxes. Finding that the crab meat pickers were employees of Breaux

---

1. 26 U.S.C. § 3101 et seq.

2. 26 U.S.C. § 3301 et seq.

and Daigle for purposes of FICA and FUTA taxation, the district court rejected Breaux and Daigle's refund claim and ordered it to pay the remaining unpaid taxes.

The sole issue in this case is whether the crab meat pickers who work for Breaux and Daigle are its employees or independent contractors. The district court's findings of fact are reviewed for clear error under Fed.R.Civ.Pro. 52(a). *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986); *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d 1042, 1044 (5th Cir.), *cert. denied*, 484 U.S. 924, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987). Although we may only set aside factual findings of the district court if we have a firm and definite conviction that a mistake has been made, *United States v. United States Gypsum Co.*, 333 U.S. 364, 394, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948), the district court's legal analysis of the inferences to be drawn from those facts is subject to plenary review. *Radio WHKW, Inc. v. Yarber*, 838 F.2d 1439, 1442 (5th Cir.1988); *see Icicle Seafoods*, 475 U.S. at 1714, 106 S.Ct. at 1530; *Mr. W. Fireworks*, 814 F.2d at 1044-45. Thus the lower court's determination of employee status is a finding of law subject to *de novo* consideration by this court. *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 265 n. 4 (5th Cir.), *modified on rehg.*, 826 F.2d 2 (1987); *Mr. W. Fireworks*, 814 F.2d at 1045; *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1327 and n. 24 (5th Cir.1985).

For purposes of FICA and FUTA the term "employee" includes "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." 26 U.S.C. § 3121(d)(2); 26 U.S.C. § 3306(i). The relevant I.R.S. regulations elaborate on this directive:

> Generally such relationship exits when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor.

26 C.F.R. § 31.3121(d)-1(c)(2)(FICA); *see* 26 C.F.R. § 31.3306(i)-1(d)(FUTA). The regulations do not provide a workable test complete in themselves but rather provide a "summary of the principles of the common law, intended as an initial guide for the determination" whether an employer-employee relationship exists. *United States v. W.M. Webb, Inc.*, 397 U.S. 179, 194, 90 S.Ct. 850, 857, 25 L.Ed.2d 207 (1970).

In *United States v. Silk*, 331 U.S. 704, 716, 67 S.Ct. 1463, 1469, 91 L.Ed. 1757 (1947), the Court identified several factors we should consider in determining whether a worker is an employee or an independent contractor for FICA tax purposes: degree of control, opportunities for profit or loss, investment in facilities, permanency of relation, and skill required in the claimed independent operation. No one factor is controlling nor is the list exclusive.[3] *See also,*

---

3. The Court in *W.M. Webb* noted that while *Silk* stressed many of the factors that had been important in common-law determinations of employee status, it also contained language (the "economic reality" test) that could be read to detach the question of statutory coverage from the common-law tests. Congressional reaction to *Silk* and its companion cases, in the form of the 1948 amendments to the Social Security Act, underscored Congress' intent that the inquiry

Restatement of Agency 2d § 220; *Usery v. Pilgrim Equipment Co.*, 527 F.2d 1308 (5th Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976) (same factors used to determine employee status for purposes of the Fair Labor Standards Act). Although the determination of employee status is to be made by common law concepts, a realistic interpretation of the term "employee" should be adopted, and doubtful questions should be resolved in favor of employment in order to accomplish the remedial purposes of the legislation involved. *Texas Carbonate Co. v. Phinney,* 307 F.2d 289, 292 (5th Cir.), *cert. denied,* 371 U.S. 940, 83 S.Ct. 318, 9 L.Ed.2d 275 (1962).

 The district court's findings of fact are fully supported by the record and are as follows. Breaux and Daigle provides the crab meat pickers with a place to work and maintains proper refrigeration and temperatures for the crab meat in accordance with the Food and Drug Administration (FDA) regulations. Breaux and Daigle also sanitizes the pickers' work area each morning before they arrive and cleans it after they leave. Supervision of the crab meat pickers by Breaux and Daigle consists mainly of insuring that they maintain the proper FDA sanitation standards. Such supervision entails assuring that the crab meat pickers wear hair nets and wash their hands before entering the picking area. The pickers are not allowed to smoke or to wear jewelry and are sent home if they fail to comply with these rules. Breaux and Daigle employees inspect the crab meat for excess shell and fat prior to packaging.

Breaux and Daigle does not supervise the manner in which a picker is to pick crabs nor does it train pickers to pick crabs. The pickers learn how to pick crabs primarily from their family members and from watching other pickers. Though one can learn to properly pick a crab within a day or so, it sometimes takes months to learn to pick quickly enough to earn a living. Indeed, some people cannot learn to pick crabs efficiently enough to earn a living doing so.

The pickers are entitled to work whenever they wish, to come and go as they please, to take breaks whenever they desire, to refuse to do any job, and to work for competitors of Breaux and Daigle. Though the pickers are not required to come to work on a daily basis, the trial court found that there was in practice a continuous or permanent relationship between Breaux and Daigle and many of the crab meat pickers. They provide their own aprons, knives, hair nets, and gloves at an approximate cost of $15.00. Should a picker prefer to work sitting down, he must provide his own perch. The pickers are not paid on an hourly basis but rather per pound of crab meat picked at a nonnegotiable price set by Breaux and Daigle.

We find that the district court correctly determined that the crab meat pickers were employees of Breaux and Daigle for purposes of FICA and FUTA. Though Breaux and Daigle did not control the intimate details of the pickers' work, the degree of control necessary for a particular endeavor is of necessity commensurate with the nature of that task.[4] Picking crabs is a simple task that does not require much supervision. This court has previously determined that crab meat pickers are unskilled laborers. *McLaughlin v. Seafood, Inc.,* 861 F.2d 450 (5th Cir.1988), *on rehg.,* 867 F.2d 875, 876–77 (5th Cir.1989) (under virtually the same working conditions, crab meat pickers found to be employees for the purposes of the Fair Labor Standards Act). As the *McLaughlin* panel observed, the minimal skill required to efficiently pick crabs argues against a finding of independent contractor status: "[t]he workers were not specialists called in to solve a

should be confined to the traditional common law test. *W.M. Webb,* 397 U.S. at 184–85; 90 S.Ct. at 853. *See United States v. Crawford Packing Co.,* 330 F.2d 194, 195 (5th Cir.1964.)

**4.** For instance, in *Ringling Brothers–Barnum and Bailey Combined Shows v. Higgins,* 189 F.2d

865, 870 (2d Cir.1951), the court held that the district court properly found an ultimate power of direction and control on the part of circus management: "it could hardly be expected to direct the manner and means by which a human cannonball would be shot from a gun."

problem, but unskilled laborers who performed the essential, everyday chores of Seafood's operation." *Id.*

In *United States v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947), the status of the workers the Court held to be employees was substantially similar to that of the crab meat pickers here. There the workers unloaded railway coal cars and were paid a set price per ton of coal unloaded. They came to the railway yard as they pleased and were assigned a car to unload and a place to put the coal. They furnished their own tools, worked when they wished, and worked for others at will. 331 U.S. at 706, 67 S.Ct. at 1465. The Court found that although the employer did not supervise the manner in which the unloaders performed their jobs, the employer "was in a position to exercise all necessary supervision over their simple tasks." 331 U.S. at 718, 67 S.Ct. at 1470.

Similarly, Breaux and Daigle supervised the crab meat pickers to the extent required by the simple task. All the work is performed on Breaux and Daigle's premises in conditions created and monitored by Breaux and Daigle. Though the pickers supply their own tools, a fact generally indicating independent contractor status, the value of the tools is so minimal that this factor is not of great weight. *See Silk*, 331 U.S. at 716–17, 67 S.Ct. at 1469–70.

Furthermore, Breaux and Daigle officials testified that had a picker consistently left too much fat or shell in the crab meat, that picker would have been instructed not to return. The ability to discharge a worker indicates "that the person possessing that right is an employer." 26 C.F.R. § 3121(d)–1(c)(2).

Breaux and Daigle's financial success depends, in part, upon the work performed by the pickers; their work is an integral part of Breaux and Daigle's seafood business. *See Silk*, 331 U.S. at 716, 67 S.Ct. at 1469. Though the faster their fingers fly, the more they earn, the pickers cannot earn a profit in the usual sense of that word. This fact indicates an employee-employer relationship. However, the pickers are paid on a per pound basis, indicative of independent contractor status. These two factors thus are essentially offsetting.

In sum, we find that the district court correctly found that the factors indicative of employee status outweighed those indicative of independent contractor status. Accordingly, the district court's ruling is

AFFIRMED