**In re Edward W. McATEE, Debtor.**

**Bankruptcy No. L-87-01442C.**

United States Bankruptcy Court, N.D. Iowa.

Feb. 13, 1991.

Kevin P. Shea, Cedar Rapids, Iowa, for debtor.

Martin McLaughlin and Roger Bracken, Trial Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

James Watkins, U.S. Trustee.

## ORDER RE: REMAND RE IRS PRIORITY CLAIM

MICHAEL J. MELLOY, Chief Judge.

This case appears before the Court on remand from the United States District Court for the Northern District of Iowa. The sole issue for determination is whether certain truck drivers of the debtor were the debtor's employees or independent contractors for federal income tax purposes in 1985 and part of 1986. The Court having held an evidentiary hearing on this matter enters the following findings of fact, conclusions of law, and order.

### Background

On June 23, 1987, the debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. The Internal Revenue Service ("the IRS") filed a timely Proof of Priority Claim (as Amended) for employment taxes, Federal Unemployment Tax Act ("FUTA") taxes and heavy vehicle taxes allegedly owed to it by the debtor. The IRS's Amended Proof of Priority Claim, dated January 24, 1989, stated that the debtor owed the IRS: $24,422.54 in FICA and unpaid withholding taxes for calendar year 1985 and the first quarter of 1986; $3,883.51 in FUTA taxes for calendar year 1985; $332.32 in heavy vehicle taxes[1]; and $11,919.23 to cover penalties.

The IRS's priority claim was based upon the IRS's characterization of the debtor's drivers as employees rather than independent contractors, as they had been treated by the debtor. The IRS's priority claim was grounded in Sections 3102, 3301, and 3403 of the Internal Revenue Code which mandate that an *employer* remit employment taxes (FICA and income tax withholding) and FUTA taxes periodically to the IRS. 26 U.S.C. §§ 3102, 3301, and 3403. Basically, Sections 3102, 3301, and 3403 provide that if workers are *employees* of the employer, the *employer* has to remit the employment and FUTA taxes. *Id.* Conversely, if the workers are *independent contractors*, the *workers*, themselves, have to remit the employment taxes and there is no FUTA tax liability. *Id.*

On April 18, 1989, this Court held a trial on the IRS's priority claim. After reviewing the evidence and arguments of counsel this Court denied the IRS's priority claim for the employment and FUTA taxes. This Court grounded its decision on the safe harbor provisions of Section 530 of the Revenue Act of 1978 which allows the debtor's own treatment of his drivers to control the employee—independent contractor determination. Having concluded that Section 530 applied, this Court did not determine whether the debtor's drivers were common law employees.

On November 6, 1989, the IRS appealed this Court's decision to the United States District Court for the Northern District of Iowa. The IRS argued that Section 530 was inapplicable since the debtor failed to

---

1. This claim has been settled and no longer remains in controversy.

meet that section's substantive requirements. Feeling that Section 530 was inapplicable, the IRS argued that the common law should control the classification of the debtor's drivers. Further, the IRS argued that the drivers were employees for common law purposes.

On April 17, 1990, the District Court vacated this Court's decision 115 B.R. 180. The District Court concluded that this Court was not presented with enough evidence to accurately determine the applicability of Section 530. The District Court also concluded that this Court was not presented with enough evidence to adequately assess whether the drivers were common law employees or independent contractors. As such, the District Court remanded the case back to this Court with instructions to hold a thorough evidentiary hearing in order to determine the applicability of Section 530 and to determine whether the drivers were common law employees or independent contractors.

On December 11, 1990, the day .of the hearing, both the debtor and the IRS stipulated that the debtor had not met the requirements of Section 530 and that the sole issue remaining for determination was whether, under the common law standards, the debtor's drivers were employees or independent contractors for federal income tax purposes.

### Findings of Fact

During 1985 and part of 1986, the debtor was engaged in the business of transporting freight by motor carrier on behalf of, and pursuant to operating agreements with, two common carriers, Heartland Express, Inc., of Iowa City, Iowa ("Heartland") and Hawkeye Refrigerated Services Corporation of Cedar Rapids, Iowa ("Hawkeye").

The debtor owned six tractors which he "leased" to Heartland or Hawkeye. Since the debtor was incapable of driving all six tractors at once, he took on additional drivers. Each driver signed a contract with the debtor ("drivers contract") which provided that the driver would not become an employee of the debtor. The drivers further agreed to be responsible for all appropriate State and Federal income taxes.

The drivers contract provided that the drivers would be compensated on a per mile basis and that the drivers would receive a percentage of the gross income that the trip generated for the debtor. The drivers contracts took one of two forms. Either the driver received 4 cents per mile and 21 percent of the debtor's gross income or 7 cents per mile and 16 percent of the debtor's gross income. The drivers were always paid by the debtor. The debtor was always paid by Heartland or Hawkeye. The drivers were never paid by Heartland or Hawkeye.

The operating agreement that the debtor entered into with Heartland ("the Heartland Operating Agreement") provided, among other things, that the debtor would supply tractors and drivers for those tractors. The debtor agreed to pay all the costs of operating and maintaining the tractors, including the cost of: fuel, oil, tolls, ferries, use taxes, weight violations, length violations, height violations, moving violations, repairs to the tractor, fines, assessments, and maintaining proper Worker's Compensation insurance on the drivers. Under the Heartland Operating Agreement, the debtor retained sole responsibility for hiring and firing, setting the wages, establishing working conditions, and controlling the drivers. In exchange for these services, Heartland agreed to compensate the debtor at a rate of seventy cents per mile driven. A two cent bonus kicked in if the debtor's tractors were driven more than 9000 miles in a four week period.

The debtor and Heartland also agreed that the drivers would not transport any freight except at the direction of Heartland, and that the drivers would operate the tractors in accordance with Heartland's "rules and policies". A Heartland employee testified that this "rules and policies" language effectively gave Heartland the ability to "fire" a driver since the Heartland dispatcher would refuse to dispatch drivers who violated a Heartland rule or policy.

Finally, the Heartland Operating Agreement specifically addressed the payment of employment taxes. Paragraph 5C provided: "The [debtor] is responsible for withholding and employment taxes due to federal, state or local governments on account of himself, drivers, helpers and other workers."

The operating agreement between the debtor and Hawkeye ("the Hawkeye Operating Agreement") was essentially the same as the Heartland Operating Agreement. Like the Heartland Operating Agreement, the Hawkeye Operating Agreement required the debtor to supply tractors, drivers for those tractors, and to pay all the costs of operating and maintaining the tractors.

Indeed, the only recognizable difference between the two agreements was the presence of the following clause in the Hawkeye Operating Agreement: "[A]ll drivers, drivers helpers and other workers necessary for performance of [this agreement] ... are and shall remain employees of the [debtor]."

### Conclusions of Law

Relying on the drivers contract and his own experiences, the debtor argues that the drivers were clearly independent contractors. The IRS argues that the drivers contract is of little significance since the actual operations of the debtor and the operating agreements the debtor signed with Heartland and Hawkeye show that the drivers were employees of the debtor.

For the purposes of employment[2] and FUTA[3] taxes, the term "employee" includes "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." 26 U.S.C. § 3121(d)(2); 26 U.S.C. § 3306(i).

The relevant IRS regulations elaborate on this directive:

Generally, such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which the result is accomplished. That is, the employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct and control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing the right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to an individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the means and methods for accomplishing the result, he is an independent contractor.

26 C.F.R. § 31.3121(d)–1(c)(2)(FICA); *see* 26 C.F.R. § 31.3306(i)–1(d)(FUTA).

However, the regulations do not provide a completely workable test for determining whether or not an employer-employee relationship exists. Instead the regulations provide a "summary of the principles of the common law,. intended as an initial guide for the [employer—employee] determination". *Breaux & Daigle, Inc. v. United States,* 900 F.2d 49, 51 (5th Cir.1990) (quoting *United States v. W.M. Webb, Inc.,* 397 U.S. 179, 194, 90 S.Ct. 850, 857, 25 L.Ed.2d 207 (1970)).

In *Avis Rent A Car System, Inc. v. United States,* 503 F.2d 423 (2nd Cir.1974), the Second Circuit[4] provided seven factors

---

**2.** Federal Insurance Contributions Act, 26 U.S.C. §§ 3101—27 and requirements for collection of income tax at source of wages, 26 U.S.C. §§ 3401–3406.

**3.** Federal Unemployment Tax Act, 26 U.S.C. §§ 3301—10.

**4.** The Second Circuit developed these factors after reviewing *United States v. Silk,* 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947) and *Bartels v. Birmingham,* 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947).

which are indicative of an employer—employee relationship:

1.) If the person receiving the benefit of a service has the right to control the manner in which the service is performed, the person rendering the service may be an employee.

2.) If a person rendering a service has a substantial investment in his own tools or equipment, he may be an independent contractor.

3.) If a person performing a service undertakes a substantial cost, say by employing and paying his own laborers, he may be an independent contractor.

4.) If a person performing a service has an opportunity to profit depending on his management skill, he may be an independent contractor.

5.) If a service rendered requires a special skill, the person rendering it may be an independent contractor.

6.) If the relationship between a person rendering a service and the person receiving it is permanent, it may be an employment relationship.

7.) If a person rendering a service works in the course of the recipient's business, rather than in some ancillary capacity, he may be an employee.

*Id.* at 429. The Eighth Circuit has adopted the *Avis* test. *See Nuttelman v. Vossberg,* 753 F.2d 712, 714 (8th Cir.1985).

No one factor is controlling nor is the list exclusive. *Breaux & Daigle, Inc. v. United States,* 900 F.2d 49, 51 (5th Cir. 1990). Doubtful factors should be resolved in favor of employment in order to accomplish the remedial purposes of the legislation involved. *Id.* at 52 (citing *Texas Carbonate Co. v. Phinney,* 307 F.2d 289, 292 (5th Cir.), *cert. denied,* 371 U.S. 940, 83 S.Ct. 318, 9 L.Ed.2d 275 (1962)).

Having considered the evidence about the day to day operations of the debtor, this Court concludes that the totality of the factors indicate that an employer—employee relationship was present between the debtor and his drivers.

The debtor had the right to control the drivers to the extent necessary to protect his investment and to discharge a driver for conduct which jeopardized the debtor's contract with the carrier. The debtor expected his drivers to work regularly and as efficiently as possible. While the drivers had some discretion as to the route chosen to get to a particular destination, the drivers were obligated to follow the directions of the employer as to where and when to transport the various loads.

The drivers had a very small investment in the tools and equipment that they used. The drivers only made expenditures for a few hand tools, whereas the debtor expended nearly $293,000 to acquire the six tractors. The debtor performed all the major repairs on the tractors and paid for fuel. The debtor remained liable to Heartland and Hawkeye for any damage or theft caused by the drivers.

The drivers had a limited ability to profit by their own management skills. Their ability to choose quicker routes or fill out log sheets do not constitute management skills. The execution of those duties is only evidence of efficient and hard-working employees.

While the Court acknowledges that driving a truck is not an easy task, the Court does not feel that it is the type of special skill that the *Avis* Court envisioned. This Court believes that a special skill pertains to services which are outside the ordinary course of the debtor's business or beyond the training capabilities of the employer. In this case, the services provided were an integral part of the debtor's business.

Finally, the debtor's own treatment of the drivers points towards an employee classification. Before April of 1986, the debtor classified three drivers as independent contractors. On April 1, 1986, the debtor suddenly decided that these same three drivers were employees. Their duties remained the same throughout both periods. Additionally, the debtor chose to treat two drivers as employees during the period prior to April 1, 1986. The only explanation for this differentiation was that these two individuals had trouble handling their money and, thus, the debtor chose to withhold FICA and income taxes

from their wages. The debtor can not choose the label which is most beneficial to him and expect the IRS or this Court to be bound by his classifications.

Based on these observations, and the other evidence presented, this Court holds that the drivers were employees of the debtor.

### Conclusion

The IRS has sought a priority claim for unpaid employment and FUTA taxes and penalties allegedly owed by the debtor. In order to prevail, the IRS needed to establish that the debtor's workers were employees of the debtor. The IRS has made such a demonstration, and therefore, is entitled to a priority claim in the amount of the delinquent taxes and penalties.

### ORDER

IT IS THEREFORE ORDERED that the debtor's objection to the Internal Revenue Service priority claim is overruled. . The IRS has a priority claim for FICA, unpaid withholding taxes, and FUTA taxes.

DONE AND ORDERED.