T.C. Summary Opinion 2012-21

UNITED STATES TAX COURT

DEAN CIBOTTI AND LORI P. CIBOTTI, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15402-10S.                          Filed March 6, 2012.

Dean Cibotti and Lori P. Cibotti, pro se.

Janet F. Appel and Nina P. Ching, for respondent.

SUMMARY OPINION

PANUTHOS, Chief Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the petition

was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $3,168.90 in petitioners' 2007 Federal income tax. The issue for decision is whether petitioners are entitled to business expense deductions claimed on a Schedule C, Profit or Loss From Business, for expenses related to petitioner Dean Cibotti's (petitioner) work with Liberty Trust Mortgage, Inc. (Liberty Mortgage). The business expense deduction issue in part depends on substantiation of the claimed expenses and also on whether petitioner was an independent contractor or an employee during 2007. If petitioner was an employee, the claimed expenses are subject to limitations and applicable reduction because of the alternative minimum tax (AMT).[1]

---

[1]Respondent asserts that if the Court concludes that petitioner is an employee, the application of the AMT would result in a disallowance of claimed employee business expense deductions as determined in the notice of deficiency. See secs. 55-59.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in New Hampshire at the time the petition was filed.

Before the year in issue petitioner was a pilot in the U.S. Air Force. After he retired from the military, petitioner became a full-time civilian pilot. In 2007 petitioner was a 33.3% owner and president of and a mortgage loan officer for Liberty Mortgage. Petitioner was also a member and treasurer of the Independent Pilot's Association (IPA), a pilot for United Parcel Service (UPS), and an admissions liaison officer for the U.S. Air Force Academy and ROTC. As a mortgage loan officer, petitioner solicited prospective clients and sold mortgage loans. Petitioner previously worked as a mortgage loan officer for Century Mortgage Co. (Century Mortgage). Century Mortgage treated petitioner as an independent contractor and issued him Forms 1099-MISC, Miscellaneous Income, for years before 2005. In 2005 petitioner accepted a position as a mortgage loan officer with Liberty Mortgage. Petitioner did not sign an employment contract evidencing the terms of the working relationship. In 2006 both Century Mortgage and Liberty Mortgage issued Forms W-2, Wage and Tax Statement, to petitioner for the taxable year 2005.

Liberty Mortgage did not provide petitioner with an office in which to conduct his business, and it appears he performed much of his work with Liberty Mortgage at his home and in meetings and closings with clients at various locations.[2] Petitioner was compensated by Liberty Mortgage solely on the basis of commissions. At some point the commissions were unilaterally reduced by Liberty Mortgage because of market fluctuation. Petitioner was not entitled to nor did he receive any base pay or employee benefits. Liberty Mortgage did not provide petitioner with potential clients or direct any facet of the solicitation of clients or closing of mortgage loans. Among other techniques, petitioner used gift certificates and sporting event tickets as incentives for clients to purchase mortgage loans. Many of petitioner's clients came from contacts he made in the military and as a union representative at the IPA.

Petitioner did not perform any services as an officer of Liberty Mortgage but was named president because he had the largest individual ownership share of the business.[3] Petitioner owned a 33.3% interest in Liberty Mortgage. The remaining

---

[2]Petitioner reported 16,800 business miles and 25,000 total miles on his 2007 Schedule C. At trial petitioner provided evidence to substantiate 19,503 business miles.

[3]Liberty Mortgage was a subch. S corporation and filed a Form 1120S, U.S. Income Tax Return for an S Corporation, for the 2007 taxable year.

66.7% of the business was owned by members of a family unrelated to petitioner. Petitioner left Liberty Mortgage in 2008.

Petitioner received Forms W-2 from Liberty Mortgage, IPA, and UPS for 2007. Petitioner and his wife filed a 2007 joint Federal income tax return reporting the wages from the Forms W-2. Petitioner also claimed business expense deductions relating to his work with Liberty Mortgage on a Schedule C. Petitioners' 2007 Federal Income tax return was selected for examination.

On April 19, 2010, the Internal Revenue Service issued petitioners a notice of deficiency disallowing, among other things, petitioner's claimed Schedule C expense deductions for gifts and car and truck expenses. The notice of deficiency did not include an explanation of the basis for the disallowance of the claimed business expense deductions. On July 7, 2010, petitioners filed a petition disputing the disallowance of the Schedule C business expense deductions.

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters

shifts to the Commissioner under certain circumstances. Petitioner did not allege that section 7491(a) applies. See sec. 7491(a)(2)(A) and (B). Therefore, petitioner bears the burden of proof. See Rule 142(a).

1.      Employment Status

Petitioner asserts that he was an independent contractor or statutory employee of Liberty Mortgage and is entitled to deduct related business expenses in full on a Schedule C. Respondent contends that petitioner was a common law employee of Liberty Mortgage and that any unreimbursed employee expenses he incurred with respect to Liberty Mortgage are thus properly claimed on Schedule A, Itemized Deductions, subject to the 2% of adjusted gross income limitation and any applicable reduction due to the AMT.

An individual who performs services as an independent contractor is entitled to deduct expenses incurred in the performance of services on Schedule C and is not subject to limitations imposed on miscellaneous itemized deductions. See Rosato v. Commissioner, T.C. Memo. 2010-39.

An individual performing services as a common law employee may deduct expenses incurred in the performance of services as an employee as miscellaneous itemized deductions on Schedule A to the extent the expenses exceed 2% of the taxpayer's adjusted gross income. Secs. 62(a)(2), 63(a), (d), 67(a) and (b), 162(a).

However, a statutory employee under section 3121(d) is not an employee for purposes of section 62 and may deduct business expenses in full on a Schedule C. See Rosemann v. Commissioner, T.C. Memo. 2009-185; Prouty v. Commissioner, T.C. Memo. 2002-175; Rev. Rul. 90-93, 1990-2 C.B. 33.

An individual qualifies as a statutory employee under section 3121(d)(3) only if the individual is not a common law employee pursuant to section 3121(d)(2). See Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 269 (2001); Rosemann v. Commissioner, T.C. Memo. 2009-185. Section 3121(d) defines "employee", in pertinent part, as follows:

> (1) any officer of a corporation; or
>
> (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee * * *

Although petitioner was the president of Liberty Mortgage, he alleges that he was given that title because he purchased the largest portion of the subchapter S corporation's shares. Petitioner performed no services in that capacity and received no payments for serving as president. An "officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration

is considered not to be an employee of the corporation." Sec. 31.3121(d)-1(b), Employment Tax Regs. Therefore, we conclude that petitioner is not considered an employee of Liberty Mortgage simply because he was the president. See id.

Whether an individual is an employee or an independent contractor is a factual question to which common law principles apply. Sec. 3121(d)(2); Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992); Weber v. Commissioner, 103 T.C. 378, 386 (1994), aff'd, 60 F.3d 1104 (4th Cir. 1995); Prof'l & Exec. Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), aff'd, 862 F.2d 751 (9th Cir. 1988). Factors that are relevant in determining the substance of an employment relationship include: (1) the degree of control exercised by the principal over the details of the work; (2) the taxpayer's investment in the facilities used in his or her work; (3) the taxpayer's opportunity for profit or loss; (4) the permanency of the relationship between the parties; (5) the principal's right of discharge; (6) whether the work performed is an integral part of the principal's regular business; (7) the relationship the parties believe they are creating; and (8) the provision of employee benefits. NLRB v. United Ins. Co., 390 U.S. 254, 258-260 (1968); United States v. Silk, 331 U.S. 704, 716 (1947); Weber v. Commissioner, 103 T.C. at 387; Prof'l & Exec. Leasing, Inc. v. Commissioner, 89

T.C. at 232; see also sec. 31.3121(d)-(1)(c)(2), Employment Tax Regs. (setting forth criteria for identifying employees under the common law rules).

We consider all of the facts and circumstances of each case, and no single factor is determinative. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. at 324; Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 270; Weber v. Commissioner, 103 T.C. at 387. The factors are not weighted equally; they are weighted according to their significance in the particular case. Aymes v. Bonelli, 980 F.2d 857, 861 (2d Cir. 1992). Doubtful questions should be resolved in favor of employment. Breaux & Daigle, Inc. v. United States, 900 F.2d 49, 52 (5th Cir. 1990).

Although not the exclusive inquiry, the degree of control exercised by the principal over the worker is the crucial test in determining the nature of a working relationship. See Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 448 (2003); Leavell v. Commissioner, 104 T.C. 140, 149-150 (1995). To retain the requisite degree of control over a worker, the principal need not direct the worker's every move; it is sufficient if the right to do so exists. Weber v. Commissioner, 103 T.C. at 387; see sec. 31.3401(c)-1(b), Employment Tax Regs.

Petitioner did not control Liberty Mortgage. Although he was the largest minority shareholder, the remaining shares were owned by a single family group

unrelated to petitioner. Additionally, petitioner did not control any facet of Liberty Mortgage, including how his income was reported to the IRS.

The record reflects that Liberty Mortgage did not have control over or dictate petitioner's hours of business, total hours, route, office location, or methods of obtaining clients. Petitioner obtained the majority of his clients through personal contacts in the military and the IPA. Petitioner did not have an office at Liberty Mortgage, and his only interactions with Liberty Mortgage centered around a weekly meeting and the payment of commissions. Liberty Mortgage did not supervise or control the manner or the means by which petitioner sold mortgages; therefore this factor indicates independent contractor status. See Butts v. Commissioner, T.C. Memo. 1993-478, aff'd, 49 F.3d 713 (11th Cir. 1995).

Additionally, maintenance of a home office is consistent with independent contractor status, although alone it does not constitute sufficient basis for a finding of independent contractor status. See Colvin v. Commissioner, T.C. Memo. 2007-157, aff'd, 285 Fed. Appx. 157 (5th Cir. 2008). Liberty Mortgage did not provide petitioner with an office in which to conduct business. Petitioner claimed

a deduction for home office expenses[4] for work done out of his home; thus this factor indicates independent contractor status.

The opportunity for profit or loss indicates independent contractor status. Simpson v. Commissioner, 64 T.C. 974, 988 (1975); see also Rosato v. Commissioner, T.C. Memo. 2010-39. Earning an hourly wage or fixed salary indicates an employer-employee relationship. See Robinson v. Commissioner, T.C. Memo. 2011-99 (citing James v. Commissioner, 25 T.C. 1296, 1300 (1956)). Petitioner was paid a percentage of the proceeds from mortgage loans he closed; he was not guaranteed any compensation. At some point, petitioner's commission percentage was unilaterally changed by Liberty Mortgage, but the eligibility criteria for that commission did not change. Thus, this factor indicates independent contractor status.

Another indicia of employee status is the principal's retaining the right to discharge a worker. See Colvin v. Commissioner, T.C. Memo. 2007-157. Petitioner's working relationship with Liberty Mortgage was not evidenced by a written contract. There is no evidence in the record as to whether petitioner could

---

[4]Respondent did not disallow the claimed home office expense deduction, and there was no testimony about this matter.

be discharged. Therefore, this factor indicates neither employee or independent contractor status.

Where a type of work is part of the principal's regular business, it is indicative of employee status. See Simpson v. Commissioner, 64 T.C. at 989; Rosemann v. Commissioner, T.C. Memo. 2009-185. The business of Liberty Mortgage was the sale of mortgage loans. Petitioner sold mortgage loans for Liberty Mortgage. Thus, the work petitioner performed is part of Liberty Mortgage's regular business and indicates common law employee status. Id.

Permanency of a working relationship is indicative of common law employee status. See id. In contrast, a transitory work relationship may weigh in favor of independent contractor status. Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 273. As previously indicated, the record does not contain an agreement concerning petitioner's work with Liberty Mortgage. Petitioner worked for Liberty Mortgage from 2005 to 2008. Petitioner was also a partial owner of Liberty Mortgage and sold mortgages continuously throughout the period. On the basis of the record, it appears that petitioner's relationship with Liberty Mortgage was permanent and indicative of common law employee status.

The withholding of taxes is consistent with a finding that an individual is a common law employee. See Packard v. Commissioner, 63 T.C. 621, 632 (1975);

Rosato v. Commissioner, T.C. Memo. 2010-39. Liberty Mortgage issued petitioner a Form W-2 for 2007 and withheld Federal and State income taxes and Social Security and Medicare taxes from his pay, indicating common law employee status. Although petitioner's previous employer issued him a Form 1099-MISC, Miscellaneous Income for 2003 and 2004, Liberty Mortgage issued him Forms W-2 beginning in 2005.[5]

The record reflects that petitioner's agreement to work for Liberty Mortgage was not evidenced by a writing. Petitioner believed he was entering into an agreement to work for Liberty Mortgage with the same expectations as in his position with Century Mortgage. For multiple years, Century Mortgage issued petitioner a Form 1099-MISC, Miscellaneous Income, indicating that Century Mortgage treated him as an independent contractor. In 2005, when petitioner was negotiating his move from Century Mortgage to Liberty Mortgage, he believed he was an independent contractor and was negotiating for another position as an independent contractor. It was not until 2006, after he left Century Mortgage and had already begun working at Liberty Mortgage, that petitioner began to receive Forms W-2 treating him as an employee. However, both Century Mortgage and

---

[5]Liberty Mortgage issued petitioner both a Form W-2 and a Form 1099-MISC, Miscellaneous Income for 2005. Century Mortgage also issued petitioner a Form W-2 for 2005.

Liberty Mortgage began withholding for petitioner in 2005 and both issued him a Form W-2 for 2005. Liberty Mortgage withheld taxes for petitioner and issued him a Form W-2 for each year from 2005 through 2008. On the basis of the record, it is not clear what relationship petitioner and Liberty Mortgage believed they were creating when petitioner began working for Liberty Mortgage in 2005 or whether that relationship changed before 2007.

Benefits such as health insurance, life insurance, and retirement plans are typically provided to employees. Weber v. Commissioner, 103 T.C. at 393-394. Petitioner was not provided benefits by Liberty Mortgage.

Considering the record and weighing the factors, we conclude that petitioner was an independent contractor of Liberty Mortgage in 2007. Therefore, petitioner is entitled to deduct business expenses on a Schedule C to the extent substantiated. See Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 269; Rosemann v. Commissioner, T.C. Memo. 2009-185.

2.    Business Expenses

The Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving the determinations erroneous. Rule 142(a). The taxpayer bears the burden of proving that he is entitled to the deduction claimed, and this includes the burden of substantiation. Id.; Hradesky v.

Commissioner, 65 T.C. 87, 90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976). A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish he or she is entitled to the deductions. Sec. 6001. Section 162(a) provides a deduction for certain business-related expenses. In order to qualify for the deduction under section 162(a), "an item must (1) be 'paid or incurred during the taxable year,' (2) be for 'carrying on any trade or business,' (3) be an 'expense,' (4) be a 'necessary' expense, and (5) be an 'ordinary' expense." Commissioner v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352 (1971); Deputy v. du Pont, 308 U.S. 488, 495 (1940) (to qualify as "ordinary", the expense must relate to a transaction "of common or frequent occurrence in the type of business involved"). Whether an expense is ordinary is determined by time, place, and circumstance. Welch v. Helvering, 290 U.S. 111, 113-114 (1933).

If a taxpayer establishes that he or she paid or incurred a deductible business expense but does not establish the amount of the expense, we may approximate the amount of the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). In order for the Cohan rule to apply, there must be

sufficient evidence in the record to provide a basis for the estimate. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Certain expenses may not be estimated because of the strict substantiation requirements of section 274(d). See sec. 280F(d)(4)(A); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969).

Section 274(d) applies to certain business expenses including, among other things, expenses for gifts and listed property (e.g., automobile expenses, cellular telephones, computer equipment, or any property of a type generally used for purposes of entertainment, recreation, or amusement) and travel expenses (including meals and lodging while away from home). Secs. 274(d), 280F(d)(4)(A). To substantiate a deduction attributable to listed property, a taxpayer must maintain adequate records or present corroborative evidence to show the following: (1) the amount of the expense; (2) the time and place of use of the listed property; and (3) the business purpose of the use. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Both the vehicle and gift expense deductions are subject to strict substantiation. Sec. 274(d)(3) and (4). Petitioner provided bank records, route maps, and photocopies of receipts for meals to substantiate his expenses, some of which were illegible as to the amount spent, the

date of the purchase, or the item purchased. We discuss each type of claimed expense in turn.

    a.    <u>Gifts</u>

Petitioner listed his business gift expense as $1,100 on his 2007 Schedule C. However, at trial petitioner claimed deductions of $1,100 for gift card expenses and $80 for two sporting event tickets. Petitioner purchased sporting event tickets and gift cards at a local grocery store as business gifts. The business gifts were incentives for clients to purchase mortgages from petitioner. "The cost of gifts may be an ordinary and necessary business expense if the gifts are connected with the taxpayer's opportunity to generate business income." <u>Bruns v. Commissioner</u>, T.C. Memo. 2009-168 (citing <u>Brown v. Commissioner</u>, T.C. Memo. 1984-120). Where a business purpose is established for the gift, pursuant to section 162, the business gift deduction is restricted to $25 per donee per taxable year. Sec. 274(b)(1).

With respect to the sporting event tickets, petitioner asserts that he purchased and gave two tickets to a certain client as an incentive. Petitioner did not substantiate this expenditure. Further, his claim of mileage expenses for travel to and from the stadium would seem to be inconsistent with his claim that the tickets were a gift. We therefore disallow this claimed gift expense.

With respect to the assertion that he purchased 44 gift cards of $25 each as business gift incentives, petitioner's bank records evidence eight purchases of gift cards.[6]  Petitioner did not provide receipts for these purchases reflecting how many gift cards were purchased during each transaction.  Therefore we conclude that petitioner made eight purchases, each limited to $25, and he is entitled to a business gift expense deduction of $200.

  b.  Vehicle Expenses

Pursuant to section 162, expenses relating to the use of an automobile that a taxpayer pays or incurs while commuting between the taxpayer's residence and the taxpayer's place of business or employment are not deductible because such expenses are personal and not business expenses.  Neal v. Commissioner, 681 F.2d 1157 (9th Cir. 1982), aff'g T.C. Memo. 1981-407; see also Fausner v. Commissioner, 413 U.S. 838 (1973); Commissioner v. Flowers, 326 U.S. 465 (1946); secs. 1.162-2(e), 1.262-1(b)(5), Income Tax Regs.  Expenses for transportation between a home office and another place of business, however, may

---

[6]Petitioner's bank records show seven purchases of $100 at Kroger #739 and one purchase of $200 at Kroger #739.  The bank records also show two additional purchases that petitioner has indicated are duplicates.  Petitioner has provided no explanation as to whether these are duplicates of earlier purchases evidenced in the bank records provided or if they are in fact additional purchases.  We therefore disregard the two purchases as duplicates.

be deductible if the home office is the taxpayer's principal place of business.

Strohmaier v. Commissioner, 113 T.C. 106, 113-114 (1999); Curphey v.

Commissioner, 73 T.C. 766, 777-778 (1980); Gosling v. Commissioner, T.C.

Memo. 1999-148.  We accordingly consider whether petitioner had a home office.

Section 280A(a) provides that, as a general rule, no deduction is allowed with

respect to the taxpayer's residence.  Section 280A(c)(1) provides several exceptions

to that general rule:

> Subsection (a) shall not apply to any item to the extent such item is
> allocable to a portion of the dwelling unit which is exclusively used on a
> regular basis--
>
> > (A) as the principal place of business for any trade or business
> > of the taxpayer,
>
> > (B) as a place of business which is used by patients, clients, or
> > customers in meeting or dealing with the taxpayer in the normal
> > course of his trade or business, or
>
> > (C) in the case of a separate structure which is not attached to
> > the dwelling unit, in connection with the taxpayer's trade or business.
>
> * * * For purposes of subparagraph (A), the term "principal place of
> business" includes a place of business which is used by the taxpayer for the
> administrative or management activities of any trade or business of the
> taxpayer if there is no other fixed location of such trade or business where
> the taxpayer conducts substantial administrative or management activities of
> such trade or business.

Where a taxpayer's business is conducted in part at the taxpayer's residence and in part at another location, the Supreme Court has held that there are two primary considerations in deciding whether the home office qualifies as the taxpayer's principal place of business: (1) the relative importance of the functions or activities performed at each location; and (2) the time spent at each location. Commissioner v. Soliman, 506 U.S. 168, 175-177 (1993); Strohmaier v. Commissioner, 113 T.C. at 111-112. As previously indicated, respondent has not challenged petitioner's home office expenses, and petitioner performed no major tasks at a regular location other than his home as he was not provided with an office by Liberty Mortgage. Thus, petitioner's home office was his principal place of business for the sale of mortgages.

We must look at whether petitioner's claimed mileage expenses are ordinary and necessary and the purpose of the claimed trips. See sec. 162; see also Freeman v. Commissioner, T.C. Memo. 2009-213. Petitioner claimed 19,503 total business miles in four categories: "regular route" from his home to the IPA office, weekly meeting at Liberty Mortgage office, mileage for attending real estate closings, and miscellaneous mileage for meetings with clients at various locations.

A taxpayer may substantiate his consistent pattern of business use of listed property for the entire year if he can establish by corroborative evidence that the

periods for which he has adequate records are representative of the whole year. Sec. 1.274-5T(c)(3)(ii)(A), Temporary Income Tax Regs., 50 Fed. Reg. 46021 (Nov. 6, 1985).

Petitioner claimed a total of 12,800 miles for his regular route, consisting of one round trip for five days per week for 50 weeks during 2007. Petitioner asserted that his regular route related to the sale of mortgages because he was on his cellular phone talking to clients during his drive to and from the IPA office. Petitioner did not provide any telephone records to substantiate that he used a cellular phone during this regular route and did not claim a business deduction for cellular phone expenses. Petitioner did not explain how driving to and from the IPA office is an ordinary and necessary business expense for the sale of mortgages or what business purpose these trips served. It appears that petitioner could communicate with clients on his cellular phone irrespective of his location. Therefore, petitioner is not entitled to deduct expenses for this portion of his claimed mileage.

Petitioner claimed a total of 2,295 miles for the round trip mileage to attend weekly meetings at Liberty Mortgage. As previously discussed, petitioner's home office was his principal place of business, and weekly meetings at Liberty Mortgage were in furtherance of his job as an independent contractor and are therefore an

ordinary and necessary business expense.  Petitioner is entitled to deduct expenses for this portion of his claimed mileage.

Petitioner claimed a total of 1,771 miles for trips to and from real estate closings.  Petitioner and his clients used the services of a certain law firm to effect the real estate closings.  Petitioner provided a route map to the law firm office, a list of closings provided by the law firm, and his calendar to corroborate his trips to the closings.  Petitioner's mileage for real estate closings was ordinary and necessary, and he is therefore entitled to deduct expenses for this portion of his claimed mileage.

Petitioner claimed a total of 2,637 miscellaneous miles for meetings with clients.  Petitioner provided route maps and receipts for purchases at various restaurants to corroborate his testimony regarding these meetings.  Petitioner is not entitled to the 45 miles to attend the sporting event previously described, which he included in his miscellaneous miles computation.  Petitioner did not prove that he incurred the expense of the tickets or the business purpose of his drive to and from the stadium for tickets allegedly purchased and given to a client.  Petitioner's other meetings with clients are an ordinary and necessary expense, and he is therefore entitled to deduct expenses for 2,592 miscellaneous miles.

Under Rev. Proc. 2006-49, sec. 5.01, 2006-2 C.B. 936, 938, the standard mileage rate for 2007 was 48.5 cents per mile; therefore petitioner is entitled to a mileage expense deduction of $3,229.13 (6,658 miles x 48.5 cents per mile = $3,229.13).

## Conclusion

In 2007 petitioner was an independent contractor of Liberty Mortgage. As such, petitioner is entitled to deduct his expenses related to Liberty Mortgage on a Schedule C. As indicated, petitioner is entitled to a $200 business gift expense deduction and a $3,229.13 mileage expense deduction.

To reflect the foregoing,

Decision will be entered

under Rule 155.