# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 22, 2012

No. 11-60390

Lyle W. Cayce
Clerk

DONALD G. CAVE, A Professional Law Corporation,

Petitioner-Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

Appeal from the Decision of the
United States Tax Court
No. 2717-08

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

The appellant taxpayer, Donald G. Cave, a Professional Law Corporation (the "Firm" or the "Cave Law Firm"), appeals from the tax court's decision holding that three associate attorneys and one law clerk who worked at the Firm were employees for federal tax purposes. The court held that the Firm was consequently liable for employment taxes due in 2003 and 2004 pursuant to the Federal Insurance Contributions Act ("FICA") and the Federal Unemployment Tax Act ("FUTA"). The Firm argues on appeal that the workers were

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60390

independent contractors rather than employees. We agree with the tax court and therefore AFFIRM the judgment.[1]

When determining whether a worker is an employee or an independent contractor for purposes of FICA and FUTA taxes, we consider several relevant factors, including the "degree of control, opportunities for profit or loss, investment in facilities, permanency of relation, and skill required in the claimed independent operation." *Breaux & Daigle, Inc. v. United States*, 900 F.2d 49, 51 (5th Cir. 1990) (citing *United States v. Silk*, 331 U.S. 704, 716, 67 S. Ct. 1463, 1469 (1947)). No single factor is determinative in this fact-dependent inquiry, nor is the list of factors exhaustive. *Id.* Although we review *de novo* the tax court's ultimate conclusion as to a worker's status, the court's findings as to each of the factors are based on inferences from the facts and may be set aside only if clearly erroneous. *See id.*; *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1044–45 (5th Cir. 1987).

The Firm argues first that the tax court applied an incorrect legal standard because the court focused on the right of an employer to control a worker and ignored the worker's own initiative in the course of the employment. Although a worker's initiative is a relevant consideration, *see, e.g., Usery v. Pilgrim Equipment Company*, 527 F.2d 1308, 1314 (5th Cir. 1976) (reversing a district court's determination that workers were independent contractors in part because the job involved "[r]outine work" and the workers were "unable to exert initiative"), the tax court here did not ignore this or any other factor. The tax court made detailed findings as to each of the factors identified above and specifically acknowledged that the associate attorneys could increase their

---

[1] The tax court also held that a fourth attorney, Donald G. Cave, was a statutory employee of the Firm based on his position as an officer of the corporation. *See* I.R.C. §§ 3121(d)(1), 3306(i); Treas. Reg. § 31.3121(d)-1(b). Because the Firm has not addressed this holding on appeal, the issue is deemed waived. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

earnings by exercising their own initiative to generate cases. The Firm's argument that the tax court applied the wrong legal standard is therefore unavailing.

The Firm also argues that the tax court incorrectly determined that the associate attorneys and the law clerk were employees. The Firm asserts that it exercised little control over the associate attorneys, noting that they were not required to work fixed hours or to work from a particular location and that the attorneys could handle their cases as they saw fit or refuse cases on which they did not want to work. The Firm also argues that the attorneys could increase their pay by generating their own cases, thereby demonstrating their independence from the Firm. It similarly argues that the law clerk was independent because he provided legal research services to other lawyers and law firms and also engaged in other forms of employment. We are unpersuaded.

As for the degree of control, the testimony and stipulated facts show that Donald Cave hired the associate attorneys, assigned cases to them, and determined whether the attorneys would be reimbursed for case-related and other expenses. Cave also reviewed pleadings and correspondence in the cases he assigned to the attorneys, while he required verbal status reports on cases that the attorneys generated themselves. Although the attorneys determined how to conduct their cases, this fact does not defeat a finding of employee status because the necessary degree of control varies with the nature of the services provided. *See Breaux & Daigle*, 900 F.2d at 52 ("[T]he degree of control necessary for a particular endeavor is of necessity commensurate with the nature of that task."); *see also Schramm v. Comm'r*, T.C. Memo. 2011-212, 2011 WL 3835670, at *3 (U.S. Tax Ct. Aug. 30, 2011) ("Where the inherent nature of the job mandates an independent approach, a lesser degree of control exercised by the principal may result in a finding of an employer-employee status."). Where professional services are involved, for example, a lower level of control is

No. 11-60390

generally required because of the nature of the job. *See Weber v. Comm'r*, 60 F.3d 1104, 1111 (4th Cir. 1995) (citing *Azad v. United States*, 388 F.2d 74, 77 (8th Cir. 1968)). The tax court here held that the Firm exercised sufficient control over the attorneys to show an employer-employee relationship because of the Firm's "ability to affect the course of litigation by its decisions regarding the funding of litigation, work assignments, and working conditions, including the supervision of associate attorneys who worked on cases generated by [the Firm] and/or Donald Cave." This holding was not clearly erroneous.

Nor did the tax court clearly err in its factual findings on the remaining factors. As for the opportunity for profit and loss, the Firm paid the attorneys one-third of the fees generated from cases that the Firm obtained, but it paid them one-half of the fees that the attorneys generated on their own. The Firm therefore correctly notes that the attorneys' opportunity for profit was subject to the attorneys' ability to generate their own cases, but the Firm does not address the tax court's corresponding finding that the attorneys were not exposed to losses. Indeed, the Firm advanced case-related expenses and absorbed losses if the cases did not produce fees; it paid for the attorneys' professional expenses, including bar dues and continuing legal education fees; it provided gasoline allowances for both work and non-work travel; and it provided automobile expenses and insurance, and even an automobile, for some of the associate attorneys. The fact that the Firm provided all this while the attorneys bore no risk of loss militates in favor of an employer-employee relationship. *See Pilgrim Equip.*, 527 F.2d at 1313 (finding that absence of opportunity for loss of capital investment weighed in favor of employee status).

The Firm also provided offices and office equipment, secretarial support, business cards, letterhead, and access to its law library and legal research services, showing a general lack of investment in the facilities of the business. In short, the Firm provided all necessary items for the attorneys to complete

their work. *See Breaux & Daigle*, 900 F.2d at 53 (noting that independent contractors generally provide their own tools); *Pilgrim Equip.*, 527 F.2d at 1314 (investment factor weighs in favor of employer-employee relationship where all risk capital is provided by the business); *Ewens & Miller, Inc. v. Comm'r*, 117 T.C. 263, 271 (2001) (noting that worker's lack of investment in goods or facilities is indicative of an employer-employee relationship).

The Firm argues that the attorneys invested in the facilities by decorating their offices and furnishing home office space, but the tax court correctly held that the record failed to show more than minimal expenses. *See Breaux & Daigle*, 900 F.2d at 53 (holding that this factor "is not of great weight" where the value of the worker's investment is "minimal"); *Dole v. Snell*, 875 F.2d 802, 810 (10th Cir. 1989) ("[T]he 'investment', which must be considered as a factor is the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself."). Moreover, there is no indication that any of the attorneys were required to supply personal equipment to perform their jobs, and their choice to work from home on occasion does not negate the fact that the Firm provided all necessary equipment and support at its office.

The attorneys also maintained continuous and exclusive relationships with the Firm, working there for periods ranging from twelve years to three years. They did not work for any other law firms and they did not offer their services to the public in any capacity other than as attorneys of the Cave Law Firm. *See Dole*, 875 F.2d at 811 (holding that independent contractors usually have fixed employment periods and move from place to place, whereas "'employees' usually work for only one employer and such relationship is continuous and indefinite").

With respect to the skill required to perform the work, the tax court held that although the attorneys were highly educated professionals, which could indicate an independent contractor status, they were not specialists called in to

solve a specific problem and instead performed the essential, every day tasks associated with the Firm's business. *See Breaux & Daigle*, 900 F.2d at 52–53; *see also Schramm*, 2011 WL 3835670 at \*4 ("Where work is part of the principal's regular business, it is indicative of employee status."). We conclude that the tax court did not clearly err in its factual findings, and, in light of the totality of the factors, correctly determined that the associate attorneys were the Firm's employees rather than independent contractors.

At oral argument, the Firm stressed that at least one of the attorneys, Renee Cooper Willis, was independent of the Firm because she switched her practice from the personal injury work performed by the Cave Law Firm to a family law practice. The Firm noted that it did not advance Willis any expenses for the family law cases, which were instead paid from client retainers. The record does not support the Firm's argument. Attorney Willis testified only that, at the time she left the Firm, more than fifty percent of her work consisted of family law cases, not that she was independent of the Firm because she no longer practiced personal injury law. In any event, the client retainers for Willis' family law cases were administered through the Firm's trust account. Willis did not maintain her own account. Moreover, the billing statements for the family law cases included both the Cave Law Firm and Willis' name, as well as the Firm's address. Notably, half of the fees generated from the family cases still went to the Firm. The Firm's argument that Willis was completely independent of the Firm because of her family law practice is therefore without merit.

Finally, with respect to the law clerk, Michael Matthews, the record shows that Donald Cave hired Matthews and exercised complete control over the assignment of Matthews' work for the Firm. Although Matthews also worked for other lawyers and law firms, providing services to multiple employers does not necessitate treatment as an independent contractor. *See, e.g., Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1988); *Ewens & Miller*, 117 T.C.

No. 11-60390

at 274 (citing *Kelly v. Comm'r*, T.C. Memo 1999-140, 1999 WL 252730 (U.S. Tax Ct. 1999)).  Matthews was paid a salary by the Cave Law Firm of approximately $1250 every two weeks, which amounts to $30,000 per year, regardless of the amount of work he performed during that time period.  Contrary to the Firm's suggestion, Matthews was not paid a minimal amount for essentially piecework.  Instead, he entered into a verbal contract with Donald Cave and the Firm for a fixed sum to provide services at the direction of Cave, and there was no evidence that he could reject any work he did not wish to perform.  Furthermore, Matthews could neither increase his profit through his own skill and initiative, nor would he suffer the risk of any losses.  Matthews also made no investment in the facilities because the Firm provided him with the amenities needed to complete his work.  Based on the above facts, the tax court held that the degree of control, the opportunity for profit and loss, and investment in the facilities were factors weighing in favor of an employer-employee relationship between the Firm and Matthews.

The tax court held that the skill factor and the permanency of the relationship were at best neutral.  Matthews, like the associate attorneys, was a skilled worker, but he performed essential, every day tasks for the business.  As for the permanency of his relationship, Mathews had a long-standing, ten-year relationship with the Firm, but he also provided work to other law firms.  On the whole, we cannot say that the tax court's findings on any of these factors were clearly erroneous.  Weighing all of the factors, with a presumption in favor of finding employment, *see Breaux & Daigle*, 900 F.2d at 52, we conclude that the tax court's finding that Matthews was an employee rather than an independent contractor was correct.

AFFIRMED.

No. 11-60390

HAYNES, Circuit Judge, concurring:

I concur. I write only to emphasize an important consideration regarding Matthews. Although Cave argues to this court that Matthews was "free" to do work for other attorneys outside the Cave Law Firm, he presented almost no evidence about Matthews's other work. It appears that the bulk of Matthews law-related work was for Cave and others at the Cave Law Firm, and he received a fixed salary from the Cave Law Firm for several years. Thus, we need not address here the tax treatment of a person who truly performs piece work for numerous business entities.